# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### NO. 1:15-CV-00399

| | |
|---|---|
| SANDRA LITTLE COVINGTON, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **DEFENDANTS' BRIEF ON SCHEDULING ISSUES FOR A THIRD PRIMARY** |
| ) | |
| STATE OF NORTH CAROLINA, *et al.* ) | |
| ) | |
| Defendants. ) | |
| ) | |

      In response to the request of the Court, made at the end of trial on April 15, 2016, defendants provide this brief on scheduling issues associated with the conduct of an additional primary, should one be necessitated by any order of this Court. This brief will note areas of agreement with plaintiffs on scheduling issues, steps required to conduct an additional primary, the latest possible date that such an additional primary could be held prior to the November 8, 2016, general election, and practical considerations that must be borne in mind when considering the schedule for an additional primary. Attached to this brief as Exhibit 1 is the Second Declaration of Kim Westbrook Strach, Executive Director of the North Carolina State Board of Elections ("the State Board"), which further discusses and elaborates on these issues.

# BACKGROUND

The 2016 general election will be held on November 8, 2016, and will include elections for both state and federal offices, including the office of President of the United States. Candidate filing for the 2016 Elections Cycle began at noon on December 1, 2015, and ended at noon on December 21, 2015. If a primary was required in a particular contest, that election was added to a statewide primary election on March 15, 2016 (the "March Primary"). In compliance with the federal Uniformed and Overseas Citizens Absentee Voting Act, 52 USCS § 20302(a)(8) ("UOCAVA"), which requires that ballots be available no later than 45 days before an election involving a federal office, and N.C. GEN. STAT. § 163-258.9, which requires ballots be available no later than 50 days prior to a primary election, absentee voting for the March Primary began on January 25, 2016.

On February 5, 2016, the State Board suspended ongoing primary elections for the United States House of Representatives pursuant to an order issued in *Harris et al. v. McCrory et al.*, No. 13-cv-949 (MDNC Feb. 5, 2016), which struck down two of North Carolina's congressional districts and required that a new congressional district plan be adopted by the General Assembly. On February 23, 2016, Governor Pat McCrory signed Session Laws 2016-1 and 2016-2, which established a new districting plan for the United States House of Representatives and directed the State Board to open filing for a congressional primary election to be held June 7, 2016 (the "June Primary"). As a result of a decision of the Superior Court of Wake County, the June Primary will also include a primary for a seat on the North Carolina Supreme Court. Absentee voting for the June Primary began on April 18, 2016, and early voting for the June Primary will run from

2

May 26 to June 4, 2016. In compliance with UOCAVA and with N.C. GEN. STAT. § 163-258.9, which requires that ballots be available no later than 60 days prior to a general election, absentee voting for the November 8 general election will begin on September 9, 2016.

## AREAS OF AGREEMENT BETWEEN THE PARTIES

The parties to this litigation generally agree as to the following with regard to any additional primary for seats in the North Carolina Senate or North Carolina House of Representative, though the parties may disagree as to their relevance or application in this case:

1. A new primary is only needed in districts that are affected, directly or indirectly, by any potential remedial maps, and as a result it is possible that less than the entire State will be affected by any order of this Court. Defendants note, however, the possibility that the need to redraw districts could extend beyond any specific districts that the Court might strike down, or the current groupings that contain those districts. Any order enjoining one or more VRA districts could trigger a requirement under *Stephenson v. Bartlett,* 355 N.C. 354, 562 S.E.2d 377 (2002) ("*Stephenson I*") that counties be re-grouped. This in turn could have a domino effect causing the redrawing of other districts, including districts that the court has upheld or districts that the court has not reviewed.

3

2. The 100-day notice requirement under state law, N.C. GEN. STAT. § 163-258.16, is for ballot measures and offices that will be on the ballot, not for candidates, so it doesn't limit the election timing.

3. The federal UOCAVA requirement for sending overseas ballots is 45 days and applies only to federal elections, so it does not apply to a new primary for House and Senate districts.

4. N.C. GEN. STAT. § 163-258.31 provides that the State Board may exercise certain emergency powers "[i]f an international, national or local emergency or other circumstances" make substantial compliance with the absentee ballot statutes "impossible or unreasonable." The parties do not necessarily agree that an additional primary that might be ordered in this case would qualify as "other circumstances" contemplated by the statute.

5. Federal law allows state to administratively seek exemption from the 45-day requirement of UOCAVA, and North Carolina has in the past extended the date to receive ballots after an election to compensate for a shorter period before they are sent out. The parties do not necessarily agree that such an exemption is advisable in a presidential election year, or that it is something that the State would think appropriate to seek.

6. County boards of elections generally need at least 21 days to create, code and print ballots, but can begin sending ballots out earlier if they are completed earlier.

4

7. An eight-day filing period would be sufficient for an additional primary; a five-day filing period has been used in the past for other modified elections.

8. The Court can eliminate a second (or run-off) primary by specifying that the candidate with the largest number of votes wins the additional primary.

## POSSIBLE SCHEDULES FOR A THIRD PRIMARY

The possible schedules for a Third Primary in this election cycle, and the requirements and assumptions underlying those schedules, are laid out in Exhibit 1, the Second Declaration of Kim Westbrook Strach. These schedules all work backwards from the unmovable date of the November 8, 2016, general election. It is important to understand these schedules all presume constricted time periods for necessary components of the election cycle, and that every such constriction carries with it significant challenges and risks to the integrity of the election as a whole.

### 1. The latest date possible for a Third Primary

It is the opinion of the State Board that the latest Tuesday on which a Third Primary could be held is **August 16, 2016**. This date is arrived at as follows:

The general election will be held on November 8, 2016. As noted above and in the Second Declaration of Kim Westbrook Strach, UOCAVA requires that absentee voting begin 45 days before the general election, and N.C. GEN. STAT. § 163-258.9 requires that ballots be available no later than 60 days prior to a general election.

Pursuant to these legal requirements, then, absentee voting for the November 8 general election must begin on September 9, 2016.[1]

Before absentee voting can begin on September 9, ballots must be prepared and coded, and digital ballots for touchscreen voting machines must be prepared. This process will take 2 weeks. Ex. 1, ¶¶ 25 and 28. Ballot preparation and coding cannot begin until the results of a primary are final. Ex. 1, ¶ 36. The results are only final after the election results are canvassed, a process that allows time for election protests to be filed to challenge election results, for recounts when necessary and for audits of the results. The shortest period of time in which canvass can reasonably occur is two weeks, though that poses a very tight deadline. Ex. 1, ¶ 39.

Thus, in order for absentee balloting to begin on September 9, the latest Tuesday on which a Third Primary could be held is August 2, 2016. If, however, the absentee voting period were to be shortened from the State-mandated 60 days to the 45 days required by UOCAVA (a 25% reduction in time for absentee voting), absentee voting would for the general election would begin on September 24, 2016, and the latest Tuesday on which the Third Primary could be held is August 16.

---

[1] Plaintiffs may argue that the 60-day period required by N.C. Gen. Stat. § 163-258.9 can be shortened, possibly either by action of the State Board pursuant to N.C. Gen. Stat. § 163-258.31 or by the Court. The latest Tuesday date of August 16 would in fact require shortening the absentee voting period to UOCAVA's 45 days. Unless the absentee voting period is shortened by an additional 14 days (to 31 days), the only way to achieve a Third Primary date of August 30 is for ballot preparation to begin immediately after the Third Primary, without allowing time for the results of that election to be finalized. Such a course would irresponsible, as it would effectively foreclose the possibility of recounts, audits or protests to correct errors that may be present in the initial results on primary night.

6

**2.    What would be necessary for the Third Primary to be held on August 16.**

In order to hold the Third Primary on August 16, a number of steps would be required:   receipt of the digital data for newly-enacted plans (known as "shapefiles") from the General Assembly, reassignment of all voters affected by the new plans, preparation of ballots for the primary election, and an absentee voting period.   In order for all of these steps to be completed in time for a Third Primary on August 16, the first step in the process—receipt of shapefiles from the General Assembly—would have to occur no later than the start of business on **May 12, 2016**.   This date is arrived at as follows:

If the State-mandated period of 50 days is used for absentee voting for the Third Primary, absentee voting would need to begin on June 27, 2016.   Ballot preparation and coding would need to begin two weeks before that date.   Ex. 1, ¶ 22.   The process of geocoding to reassign voters can reasonably be expected to take three weeks (15 business days).   Ex. 1, ¶ 23.

The June Primary presents a particular challenge to geocoding, however.   In essence, geocoding cannot occur at the same time that voting is happening without posing a substantial risk that voters who present at the polling place will not actually be able to vote.   Ex. 1, ¶¶ 46–48.   Voting for the June Primary will start on May 26 and will continue through June 4 (Saturday), with the June Primary being held on June 7. Realistically, geocoding cannot happen during this time.   As a result, the State Board would have had to receive shapefiles from the General Assembly by start of business on

7

May 4, 2016, to have geocoding completed by the beginning of early voting on May 26. Even if the State-mandated 50-day absentee voting period for the Third Primary were to be reduced to UOCAVA's 45-day requirement (a 10% reduction), shapefiles would still have been needed by May 4 in order to be completed before the beginning of early voting in the June Primary.

The only way possible to allow for a later date for receipt of the shapefiles would be for geocoding to begin prior to early voting for the June Primary, then be suspended while voting in the June Primary is occurring, and then resume after June 7. In order to accommodate this schedule, shapefiles would have to be received by the State Board no later than start of business on Thursday, May 12, 2016. This option, however, presents significant risks by requiring that geocoding and canvass happen simultaneously, which increases the risk of error and decreases the ability of county board staff to complete these processes.

The basic components of the schedules described above are shown below:

| Decision Point | Scenario 1 | Scenario 2 | Scenario 3 | Scenario 4 |
|---|---|---|---|---|
| Third Primary is subject to the State absentee deadline (50 days) | Yes | Yes | No | No |
| Absentee deadline to which the general election is subject | State deadline (60 days) | UOCAVA (45 days) | State deadline (60 days) | UOCAVA (45 days) |
| Last possible Third Primary election date | Tuesday, August 2, 2016 | Tuesday, August 16, 2016 | Tuesday, August 2, 2016 | Tuesday, August 16, 2016 |
| Last date to get shapefiles | Wednesday, May 4, 2016 | Wednesday, May 4, 2016 | Wednesday, May 4, 2016 | Thursday, May 12, 2016 |
| Would geocode changes occur before early voting for the June Primary or be split before and after early voting? | All geocode changes would occur before early voting | All geocode changes would occur before early voting | All geocode changes would occur before early voting | 6 business days would occur before early voting and 9 after the June Primary |

## PRACTICAL CONSIDERATIONS THAT MUST BE BORNE IN MIND FOR A THIRD PRIMARY THIS ELECTION CYCLE

As noted above, the constricted timeframes allotted in the schedules described above for certain tasks—geocoding to assign voters to newly-created districts, preparation and coding of ballots, canvassing to certify the results of the primary elections—carry significant challenges and risks. For example, normally a county board of elections would be able to focus on geocoding without the distractions of other aspects of election preparation or follow-up. Here, any affected county boards would have to engage in geocoding for voter reassignment while at the same time preparing for the June Primary or engaging in canvassing after the June Primary. This time after the primary could include recounts, protests or audits, the resolution of which could affect the

9

outcome of the election. Trying to conduct voter reassignment and canvass at the same time would require the often limited staff of county boards to work on both simultaneously rather than allowing them to focus on one specific task. Especially in such a tight timeframe, this would increase the risk of error, both as to geocoding and audits or recounts. Any error could have the effect of delaying election results or possibly disenfranchising voters. In short, these schedules leave little to no room for detection or correction of error of any kind.[2]

In order for the Third Primary to be held on August 16, the absentee voting period or the general election mandated by State law would have to be shortened by 25%, while the time mandated by State law for a primary would be shortened by 10%. In order for the Third Primary to be held later, the absentee voting period for the general election would have to be shortened even more, perhaps by as much as 33% of UOCAVA's 45 days. Such a shortening of absentee voting period would primarily affect overseas voters, especially voters in the armed services, whose participation in the electoral process the deadlines are intended to benefit and protect. While it might be possible to offset any change in the absentee period with an extended period of time for receipt of ballots after the election, such an approach can delay the ability to ascertain and certify

---

[2] The severely truncated canvass period that would be required in order to hold a Third Primary would also impose unreasonable limitations on the ability of county boards and the State Board to deal with protests, which could diminish the rights of candidates and of the public at large. As noted in Exhibit 1, the deadline for filing protests is 5:00 P.M. on the second business day after the primary. Ex. 1, ¶ 40. Limiting the canvass period to two weeks would mean that a protestor could file on Thursday at 5:00 P.M., the State Board would have to assume jurisdiction the following day and then notice a meeting that conforms to North Carolina's Public Meetings Act for a final hearing adjudicated before the Tuesday canvass.

10

election results.  Particularly in a presidential election year, prompt finality of election results is not only in the interests of North Carolinians but of the nation as a whole.

Moreover, a Third Primary for legislative seats, held after one primary has already been held for those seats and after the nominees of the political parties have begun campaigning, will only result in voter confusion.  Changing rules that voters have come to rely on—and will have used twice in this election cycle already—will confuse voters further and may depress what will likely be very low turnout to start with.  This Court should avoid such a result. *See Purcell v. Gonzalez*, 549 U.S. 1, 5 (2006) ("Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase.")

Perhaps most fundamentally, the proposed schedules—both from defendants and, it is anticipated, from plaintiffs—are dependent on something out of the control of the elections administrators:  entry of an order striking down some or all of the challenged districts and adoption of new plans by the General Assembly.  The schedules outlined above not only show that August 16, 2016, is the latest Tuesday on which a Third Primary could be held, but also show that new legislative plans would need to be received by the State Board no later than May 12, 2016, in order for a Third Primary to be held on August 16, and that is only possible if reassignment of voters takes place while canvass of the June Primary results is also occurring, which increases the risk of error for both processes.  And of course the General Assembly cannot adopt new plans until this Court has not only entered an order in favor of plaintiffs, but has provided sufficient

explanation as to *each district* found to be in violation of the law of how that district violates the law, as well as sufficient guidance to the General Assembly so that it knows what standards to apply in any new plan. There simply is not time for this to happen in this election cycle.[3]

Defendants, of course, believe that plaintiffs have failed to carry their burden of proof and that judgment should be entered for defendants, not for plaintiffs. The plans adopted by the General Assembly in 2011 are legal and should not be struck down. The North Carolina Supreme Court has twice rejected the arguments put forward by plaintiffs and upheld the plans. As a result, three election cycles have now been conducted using these plans.

Should the Court decide otherwise, however, the Court should also act consistently with its order of November 25, 2015, denying plaintiffs' motion for preliminary injunction. [D.E. 39] In that order, this Court noted that the preliminary relief sought by plaintiffs "would cause an extraordinary disruption to North Carolina's 2016 election cycle." [D.E. 39, p. 8] That order was entered three and one-half months *prior* to the March Primary. Now that the March Primary has been held and candidates have begun campaigning, it is even more accurate. *See Pender County v. Bartlett*, 361 N.C. 491, 510, 649 S.E.2d 364, 376 (2007) ("We also realize that candidates have been preparing for the 2008 election in reliance upon the districts as presently drawn.

---

[3] Likewise, these schedules do not allow for any time for review of new plans by this Court, much less for this Court to adopt its own plans should it find it must do so. Nor do they provide any time for the General Assembly to conduct an analysis of racial polarization should such an analysis be required by a decision of this Court, or to make a functional analysis on the "right" percentage of black VAP for any specific district.

Accordingly, to minimize disruption to the ongoing election cycle, the remedy explained above shall be stayed until after the 2008 election.")  Requiring a Third Primary at this point in the election cycle would unquestionably "cause an extraordinary disruption to North Carolina's 2016 election cycle."  This is something federal courts have been counseled to avoid.  *See Purcell*, *supra*.

Given all of these considerations, should this Court find in favor of plaintiffs, this Court should nevertheless allow the 2016 election cycle to proceed using the 2011 plans and order that any new plans be adopted in time for the 2018 election cycle.  Doing so will not only avoid "extraordinary disruption" to the election cycle currently in progress, but will allow time for the Supreme Court to resolve the conflict between a decision of this Court and the decisions of the North Carolina Supreme Court.

## CONCLUSION

For the foregoing reasons and reasons stated in defendants' post-trial brief, filed contemporaneously herewith, plaintiffs' claims should be dismissed and judgment entered for the defendants.  If judgment is entered for plaintiffs, judgment should be stayed pending appeal to the Supreme Court and the 2016 election cycle should be allowed to continue using the 2011 legislative plans.

This the 6th day of May, 2016.

NORTH CAROLINA DEPARTMENT OF
JUSTICE

By: /s/ Alexander McC. Peters
Alexander McC. Peters
Senior Deputy Attorney General
N.C. State Bar No. 13654
apeters@ncdoj.gov
N.C. Department of Justice
P.O. Box 629
Raleigh, NC  27602
Telephone: (919) 716-6900
Facsimile: (919) 716-6763
*Counsel for Defendants*

OGLETREE, DEAKINS, NASH
SMOAK & STEWART, P.C.

/s/ Thomas A. Farr
Thomas A. Farr
N.C. State Bar No. 10871
Phillip J. Strach
N.C. State Bar No. 29456
thomas.farr@ogletreedeakins.com
phil.strach@ogletreedeakins.com
4208 Six Forks Road, Suite 1100
Raleigh, North Carolina 27609
Telephone:  (919) 787-9700
Facsimile:  (919) 783-9412
*Co-counsel for Defendants*

## CERTIFICATE OF SERVICE

I, Thomas A. Farr, hereby certify that I have this day served the foregoing

**DEFENDANTS' BRIEF ON SCHEDULING ISSUES FOR A THIRD PRIMARY** to the following:

Edwin M. Speas, Jr.
John W. O'Hale
Carolina P. Mackie
Poyner Spruill LLP
P.O. Box 1801 (27602-1801)
301 Fayetteville St., Suite 1900
Raleigh, NC  27601
espeas@poynerspruill.com
johale@poynerspruill.com
cmackie@poymerspruill.com
*Attorneys for Plaintiffs*

Adam Stein
Tin Fulton Walker & Owen, PLLC
312 West Franklin Street
Chapel Hill, NC 27516
astein@tinfulton.com
*Attorney for Plaintiffs*

Anita S. Earls
Allison J. Riggs
Southern Coalition for Social Justice
1415 Highway 54, Suite 101
Durham, NC  27707
anita@southerncoalition.org
allisonriggs@southerncoalition.org
*Attorneys for Plaintiffs*

This the 6th day of May, 2016.

OGLETREE, DEAKINS, NASH
SMOAK & STEWART, P.C.

/s/ Thomas A. Farr
Thomas A. Farr
N.C. State Bar No. 10871
4208 Six Forks Road, Suite 1100
Raleigh, NC  27609
Telephone:  919.787.9700
Facsimile:  919.783.9412
thomas.farr@odnss.com