# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# No. 1:15-cv-00399-TDS-JEP

| | |
|---|---|
| SANDRA LITTLE COVINGTON, *et al.*,<br><br>                                Plaintiffs,<br>v.<br><br>THE STATE OF NORTH CAROLINA, *et al.*,<br><br>                               Defendants. | **PLAINTIFFS' SUPPLEMENTAL BRIEF ON REMEDIES** |

## I.    INTRODUCTION

Plaintiffs' submit that this Court should issue an Order permitting the General Assembly two weeks, that is, until August 11, 2017, to enact remedial districts in the parts of the state affected by the unconstitutional racial gerrymander that occurred in 2011. That should be the deadline for compliance with this Court's order whether or not the additional remedy of a special election is warranted.

Plaintiffs' further submit that a balancing of the relevant equitable considerations present in these circumstances demands that a special election be ordered before the General Assembly reconvenes for its 2018 legislative session on May 16, 2018. Resolution 2017-12, §3.1. Exhibit 1 is an illustrative schedule for further proceedings in this case that demonstrates the feasibility of concluding those elections in March with only slight modifications to state law requirements concerning absentee balloting periods. Notably, this schedule is consistent with the State of North Carolina's position that 1) a special election should occur while the General Assembly is in recess, and 2) no later

than March 2018. Position Stmt. By the State of North Carolina and the State Bd. of Elections 4 (Doc. 162, July 6, 2017).

Primary among the considerations justifying a special election include: 1) the fact that the constitutional violation here is significant, affecting approximately 75% of the state's Senate Districts and 67.5 percent of the House districts. Decl. of Dr. Thomas Hofeller, 5-6, (Doc. 136-1, Oct. 28, 2016); 2) that the irreparable injury experienced by voters assigned to districts based on their race is significant; 3) that a special election conducted while the General Assembly is not in session minimizes the disruption of the governmental functions; 4) that the intrusion on state sovereignty here is measured and required, particularly given that the Defendants to date have failed to comply with this Court's order to redraw the racially gerrymandered districts; 5) that the intrusion on state sovereignty is also minimal since it is the policy of this state, as expressed in the state constitution, that "[f]or redress of grievances and for amending and strengthening the laws, elections shall be often held." N. C. Cont. Art. 1, § 5; and 6) that the legitimacy of further actions by this legislature is called into question under state law until its members are elected from districts that are constitutional.

As the Supreme Court made clear over fifty years ago: "It is ludicrous to preclude judicial relief when a mainspring of representative government is impaired. Legislators have no immunity from the Constitution." *Baker v. Carr*, 369 U.S. 186, 249 (1962). The legislative defendants have delayed as long as possible, the time has come for a remedy in this case.

## II. ARGUMENT

A. **The North Carolina Supreme Court Decisions in *Stephenson v Bartlett I* and *II* Provide Important Guidance for this Court in Determining the Timing and Scope of a Proper Remedy in this Case**.

Decisions made by North Carolina's state courts in 2002 to remedy constitutional defects in legislative redistricting plans enacted by the General Assembly in 2001 are especially instructive as this Court considers the timing and scope of remedies for the constitutional defects in the legislative redistricting plans enacted by the General Assembly in 2011. On April 30, 2002, the North Carolina Supreme Court declared that both the House and Senate redistricting plans enacted by the General Assembly in 2001 were void in their entirety because those plans divided more counties than permitted by the "whole county provisions" of Article II, Sections 3(3) and 5(3) of the state constitution. *Stephenson v. Bartlett*, 355 N.C. 354, 562 S.E.2d 377 (2002). To remedy those defects, the Court remanded the case to the trial court with instructions to determine if the General Assembly could promptly redraw the districts and if not, to redraw the districts itself. *Id*. 355 N.C. at 385.

Two weeks later, on May 17, 2002, the General Assembly enacted new plans. On May 20, the trial court declared that those new plans failed to remedy the violations of the state constitution and undertook to draw its own plans. The General Assembly's request to stay that order was denied by the Supreme Court on June 6. On July 12, 2002, the United States Department of Justice precleared the trial court's plans. Primaries were conducted under those plans nine weeks later (on September 9), and 8 weeks later (on

3

November 5) the 2002 general election was held for all 50 seats in the Senate and all 120 seats in the House. *Stephenson v Bartlett*, 357 NC 301, 303-04 (2003).

In 2002 the North Carolina courts acted promptly to prevent any injury to North Carolinians from being assigned a district improperly formed from pieces of counties. This Court should follow that model in remedying the personal injuries inflicted on North Carolinians over the past six years by Defendants' racially gerrymandered districts.

**B.    The Legislative Defendants seek more time to Redraw from the Court than the General Assembly has Allowed itself to Redraw.**

In their July 6 Position Statement the Legislative Defendants state that "the General Assembly envisions completing the redistricting process no later than November, 15, 2017." Leg. Defs. Position Statement 2 (Doc. 161, July 6, 2017). That proposed leisurely pace demeans the extraordinary harm the Legislative Defendants have inflicted on the Plaintiffs and repudiates the express terms of a statute the General Assembly enacted in 2003. That statute establishes two weeks as the time the General Assembly needs to draw remedial redistricting plans and further provides that that when the General Assembly fails to act within that period the courts should draw an interim plan. N.C. Gen. Stat. § 120-2.4 (2003). Importantly, drawing remedial districts is not the same enterprise as redrawing districts following a new census which requires taking into account the population shifts that occur over a decade.

C.  **The Failure to Hold Special Elections before the Next Legislative Session Brings into Question the Legitimacy of Any Actions by the Unconstitutionally Elected General Assembly**

In weighing the equitable considerations relevant to the question of whether special elections should be held before the North Carolina General Assembly convenes again in its regular "short session" in May 2018, and in considering the individual and collective interests at stake, one consideration must be the extent to which the legitimacy of the actions of an unconstitutionally elected Legislature may be severely undermined. Under state law, officers elected pursuant to an unconstitutional law are "usurpers" and their acts are absolutely void. *In re Pittman,* 151 N.C. App. 112, 115, 564 S.E.2d 899, 901 (2002). While there is a *de facto* officer doctrine which is designed to validate the past acts of public officers illegally in office because otherwise, chaos would ensue. *Ryder v. United States*, 515 U.S. 177, 180 (1995), North Carolina courts have held that once the unconstitutionally of an election is finally determined, the *de facto* doctrine no longer applies and the officers elected at those invalid elections becomes usurpers. *See State v. Lewis*, 107 N.C. 967, 12 S.E. 457, 458 (1890) (the acts of an officer elected pursuant to an unconstitutional law are valid if performed *before* the unconstitutionality of the law has been judicially determined.) *See also, Kings Mountain Bd. of Educ. v. North Carolina State Bd. of Educ.,* 159 N.C. App 568, 575, 583 S.E.2d 629, 635 (2003) (for a *de facto* officer's acts to be valid, there must be circumstances creating a public presumption of legal right); *Keeler v. City of Newbern,* 61 N.C. 505, 507 (1986) (mayor and town council lack public presumption of authority to office, making them usurpers).

Once a public officer is adjudged as illegally in office and exposed as acting without legal authority, any subsequent acts are "absolutely void for all purposes." *Van Amringe v. Taylor*, 108 N.C. 196, 12 S.E.1005, 1007 (1891).

> The *Van Amringe* Court eloquently explained the reasoning for this conclusion:
>
> The ascertainment of the popular will or desire of the electors under the mere semblance of an election unauthorized by law is wholly without legal force or effect, because such election has no legal sanction. In settled, well-regulated government, the voice of electors must be expressed and ascertained in an orderly way prescribed by law. It is this that gives order, certainty, integrity of character, dignity, direction and authority of government to the expression of the popular will. An election without the sanction of the law expresses simply the voice of disorder, confusion and revolution, however honestly expressed. Government can not take notice of such voice until it shall in some lawful way take on the quality and character of lawful authority. This is essential to the integrity and authority of government.

*Van Amringe*, 108 N.C. at 198, 12 S.E. at 1006. The *Van Amringe* principle applies with particular force here, because of the scope of the constitutional violation in this case. Where nearly two-thirds of all of the districts used to elect the legislature must be redrawn to comply with the state and federal constitutions, the integrity and authority of the legislature is called into question.

On June 30, 2017, the United States Supreme Court issued its mandate in this case. Arguably, under *State v Lewis* and *Van Amringe v. Taylor* upon issuance of that mandate the members of the illegally constituted General Assembly lost the protection of the *de facto* doctrine and became usurpers unauthorized to act to protect the health and

6

safely of all North Carolinians.[1] It is entirely possible that any legislative actions they take without being elected from legal districts could be subject to challenge under state law. This risk is not merely speculative. One public interest law organization has already publicly indicated its position that:

> Because the General Assembly is now a usurper legislature and their enactments have no binding effect, we believe that the General Assembly is without authority to override Governor Cooper's veto of H576, a bill that would allow landfills to use a new technology to spray liquid garbage waste into the air throughout North Carolina without a permit. Accordingly, if the usurper legislature does attempt to override the veto it opens itself up to litigation wherein the North Carolina State Courts may be asked to issue a declaratory judgment that the law is facially unconstitutional and void ab initio.

Declaration of Derb Stancil Carter, Jr., July 21, 2017, Attachment at 2, filed herewith as Exhibit 2. Moreover, the North Carolina NAACP has taken a similar position, arguing that this court "has strong justification to enjoin the current General Assembly from further convening or enacting any more legislation." Br. of Amicus Curiae of the North Carolina State Conf. of the NAACP, 20 (Doc. 164-3, July 11, 2017). *Cf. Butterworth v. Dempsey,* 237 F. Supp. 302, 311 (D. Conn. 1964 (enjoining the Connecticut legislature from passing any new legislation unless reconstituted in constitutionally-drawn districts, but staying that order so long as the Court's timeframe for enacting new districts is followed).

---

[1] While the legislature has lost the protection of the *de facto* doctrine under state law, it retains the legal authority under federal law to have the first opportunity to cure the constitutional defect, *Reynolds v. Sims*, 377 U.S. 533, 586, 84 S. Ct. 1362, 1394 (1964), and can act by virtue of this Court's order granting it leave to redraw the unconstitutional districts.

7

This risk is entirely the product of the dilatory tactics of the General Assembly. This Court should order them to enact remedial districts immediately and conduct special elections before the next session of the General Assembly in order to remove the risk that any acts the General Assembly takes, as usurpers, will be challenged as void *ab initio*.

**D.      Representative Lewis Cannot Revoke His Waiver of Legislative Privilege**

Plaintiffs have subpoenaed Defendant Representative David Lewis, who Plaintiffs believe has information relevant to the issue of how quickly remedial districts can be drawn. Plaintiffs anticipate that Representative Lewis may assert legislative privilege, however, courts disfavor parties strategically taking inconsistent positions on their legislative privilege throughout different stages of litigation. *See Favors v. Cuomo*, 285 F.R.D. 187, 212 (E.D.N.Y. 2012). In his deposition in this case, Representative Lewis was asked "And let me begin, Representative Lewis, by simply confirming that you continue to waive your legislative privilege with regard to this matter." He answered: "With regard to this matter, yes, sir." Dep. of Representative David Lewis, p. 5, lines 4-8, February 5, 2016 (copy attached as Exhibit 3). He cannot now selectively assert the privilege to avoid testifying about facts relevant to the court's considerations of a proper remedy in this case. Moreover, even if the court were to conclude that the legislative privilege can be selectively waived and then asserted within a single case, the privilege is qualified, not absolute, and the circumstances of this case would mandate disclosure of the information that Plaintiffs seek. *See, e.g., Benisek v. Lamone*, No. 13-cv-3233, 2017

8

U.S. Dist. LEXIS 35396 (D. Md. Mar. 13, 2017) (three judge court) (legislative witnesses not entitled to claim legislative privilege in redistricting case, applying five-factor test).

## E.  CONCLUSION

Plaintiffs' respectfully request that in conducting the "equitable weighing process" required by the Supreme Court on remand herein, Order at 2, (Doc. 149, June 5, 2017), (per curiam), this court consider the evidence, factual materials, legal authorities and arguments by Counsel already in the record in this matter, including:

1. Pls' Post-Trial Briefing on Remedy, (Doc. 115, May 6, 2016) at 3-14 (irreparable harm suffered by Plaintiffs, authority of court to order special elections, public interest in discontinuing illegal election systems, past experience ordering special elections in North Carolina) and at 15-17 ¶¶ 1,2,6-8 (agreements between the parties still relevant now to determining a special election schedule.)

2. *Stephenson v. Bartlett,* No. 1 CV 02885 (Johnston Co. Sup. Ct.), Pls' Mem. Concerning An Appropriate Remedy (Doc. 115-7, Feb. 19, 2002) at 2-5; 19-22 (why immediate remedy for unconstitutional districts is in the public interest and plaintiffs otherwise suffer irreparable harm); and at 6-19 (measures taken in the past in North Carolina and other states to alter election schedules to remedy unconstitutional plans).

3. Decl. of Gary Bartlett (Doc. 115-9, May 6, 2016) (facts relating to past shortened election schedules and time required for ballot preparation).

4. Deposition Test. of Kelly Doss, Joseph Fedrowitz, Gary Sims (Docs. 115-10, 115-11, and 115-12) (assigning voters to new districts is a quick process, Guilford, Durham and Wake Counties completed it in a few days).

5. Mem. in Support of Pls' Mot. for Additional Relief (Doc. 133, September 30, 2016) at 3-4 (two weeks is a reasonable time to enact a remedial plan), at 5-8 (harm suffered by plaintiffs, examples of special elections ordered in other cases), at 11-12 (courts have the authority to modify election deadlines and state constitutional residency requirements).

9

6. *Stephenson v. Bartlett,* No. 01-cvs-2885, Johnson County Superior Ct., Order of May 8, 2002 (Doc. 133-1) at 2 (remedial legislative plan required within 12 days, response a day later and a court hearing two days later).

7. *Perez v. Perry,* Case No. 5:11-cv-360, ECF No. 486 at *3 (W.D. Tex. Nov. 4, 2011) and ECF No. 685 at *3 (W.D. Tex. March 1, 2012) filed herein as Docs. 133-3 and 133-4 (shortening the residency requirement in the Texas Constitution in connection with ordering special election schedule).

8. Pls' Reply to Defs' Mem. on Add'l Relief (Doc. 139, Nov. 15, 2016) (time required to enact remedial districts and significance of Defendants' admission that if they have maps drawn by May 1st, they can have a General Election in November).

9. Decl. of Gary Bartlett (Doc. 139-2, Nov. 15, 2016) at 2-3 (administering special elections is not unduly burdensome).

10. Pls' Br. in Opp'n to Defs' Emergency Mot. to Stay (Doc. 143, Dec. 23, 2016) at 7-10 (court has authority to order special elections to remedy unconstitutional districts).

11. Pls' Mot. to Set Deadlines for Remedial Plan (Doc. 150, June 8, 2017) at 1-3 (procedural history of case as it relates to remedy).

12. Proclamation, June 7, 2017 (Doc. 150-1) (Governor's Proclamation to call a special session "for the purpose of enacting new House and Senate district plans for the General Assembly that remedy the legislative districts ruled unconstitutional.)

13. Pls. Statement in Response to Court's Notice of June 9, 2017, (Doc. 156, June 16, 2017).

Based on the facts and legal authorities contained in all of these materials in the record, Plaintiffs respectfully request that the Court give the General Assembly no more than two weeks to enact remedial districts, and require the State of North Carolina to conduct special elections in the affected districts in March of 2018.

This the 21st day of July, 2017.

| | |
|---|---|
| **POYNER SPRUILL LLP** | **SOUTHERN COALITION FOR SOCIAL JUSTICE** |
| By: s/ Edwin M. Speas, Jr.<br>Edwin M. Speas, Jr.<br>N.C. State Bar No. 4112<br>espeas@poynerspruill.com<br>Caroline P. Mackie<br>N.C. State Bar No. 41512<br>cmackie@poynerspruill.com<br>P.O. Box 1801 (27602-1801)<br>301 Fayetteville St., Suite 1900<br>Raleigh, NC 27601<br>Telephone: (919) 783-6400<br>Facsimile: (919) 783-1075<br><br>*Counsel for Plaintiffs* | By: s/ Anita S. Earls<br>Anita S. Earls<br>N.C. State Bar No. 15597<br>anita@southerncoalition.org<br>Allison J. Riggs<br>State Bar No. 40028<br>allisonriggs@southerncoalition.org<br>Southern Coalition for Social Justice<br>1415 Highway 54, Suite 101<br>Durham, NC 27707<br>Telephone: 919-323-3380<br>Facsimile: 919-323-3942<br><br>*Counsel for Plaintiffs* |

## CERTIFICATE OF SERVICE

      I hereby certify that on this date I have electronically filed the foregoing **PLAINTIFFS' SUPPLEMENTAL BRIEF ON REMEDIES** with the Clerk of Court using the CM/ECF system which will provide electronic notification of the same to the following:

Alexander M. Peters
Special Deputy Attorney General
Office of the Attorney General
P.O. Box 629
Raleigh, NC 27602
apeters@ncdoj.gov
*Counsel for Defendants*

Thomas A. Farr
Phillip J. Strach
Michael D. McKnight
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
4208 Six Forks Road, Suite 1100
Raleigh, NC 27602
thomas.farr@ogletreedeakins.com
phillip.strach@ogletreedeakins.com
michael.mcknight@ogletreedeakins.com
*Counsel for Defendants*

This the 21st day of July, 2017.

      /s/ Anita S. Earls
      Anita S. Ear.s