IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
NO. 1:15-CV-399

SANDRA LITTLE COVINGTON, *et al.*,

  Plaintiffs,

v.

THE STATE OF NORTH CAROLINA, *et al,*

  Defendants.

## PLAINTIFFS' REPLY BRIEF ON SCOPE OF REVIEW AT THE REMEDY STAGE

**I.  SUMMARY OF ARGUMENT**

The proposition that a federal court should not order a jurisdiction to implement a remedial redistricting plan that violates state or federal law is so basic as to be nearly self-evident.  Indeed, there is no precedent for the notion that when fashioning equitable relief for a constitutional violation, a court may not consider whether the remedy offered by the state is consistent with all applicable state and federal requirements.  Courts reviewing a proposed remedial redistricting plan seek to carry out their responsibility to only order into effect redistricting plans that are legal.  To hold otherwise, namely that a new lawsuit must be filed to adjudicate the new violations in a remedial plan, opens the door to endless and ultimately fruitless litigation to try to obtain constitutional election districts.  Moreover, should this Court approve the use of districts that otherwise violate applicable

1

state or federal constitutional provisions, that approval will be used by the state as a bar to prevent any further challenges to the districts. If approved by this Court, the state will claim, correctly, that they are under a federal court order to use the 2016 legislative districts. Such a catch-22 insulates the districts from review and permits the defendants to violate the law with impunity at the remedial stage, but it hardly constitutes justice and it certainly is not what the law requires.

Moreover, Plaintiffs object that by redrawing districts that were not declared unconstitutional by this Court and that do not border unconstitutional districts or otherwise need to be redrawn, the state has exceeded the authority granted to it by this court's Order requiring them to enact a plan "remedying the constitutional deficiencies with the Subject Districts." Order 8, July 31, 2017, ECF No. 180. This is a federal question that only this Court can determine.

Finally, the fact that this is a three-judge court does not divest this Court of the power or responsibility to "consider whether the proffered remedial plan is legally unacceptable because it violates anew constitutional or statutory voting rights." *McGhee v. Granville Cty.*, 860 F.2d 110, 115 (4th Cir. 1988) (citing *Upham v. Seamon,* 456 U.S. 37, 42 (1982)). Considerations of a proper remedy are inextricably intertwined with the merits of the claim that this Court unquestionably has jurisdiction to adjudicate. Legislative Defendants' argument that the court must order into effect an illegal redistricting plan is based on a misreading of the precedents they cite, and is completely unsupported by any relevant legal doctrine.

## II. ARGUMENT

### A. This Court Must Determine if the Remedial Plan is Legally Acceptable.

In deciding whether the 2017 remedial redistricting plan is an adequate and appropriate remedy for the constitutional violations that exist in the 2011 redistricting plan, the Court has the duty to "follow the policies and preferences of the State, as expressed in statutory and constitutional provisions or in the reapportionment plans proposed by the state legislature, whenever adherence to state policy does not detract from the requirements of the Federal Constitution." *Upham,* 456 U.S. at 41. North Carolina's prohibition on mid-decade redistricting and its whole county provision, *see* N.C. CONST. Article II, Sections 3(3-4) and 5(3-4), are state constitutional provisions that this Court must ensure are followed unless doing so would violate some requirement of federal law. *See Upham,* 456 U.S. at 41. Referring to its earlier decision in *White v. Weiser,* 412 U.S. 783 (1973), the *Upham* court explained that "[t]he only limits on judicial deference to state apportionment policy, we held, were the substantive constitutional and statutory standards to which such state plans are subject."

In *White v. Weiser,* the Court held that "[o]f course, the District Court should defer to state policy in fashioning relief only where that policy is consistent with constitutional norms and is not itself vulnerable to legal challenge." *White v. Weiser,* 412 U.S. at 797. There is nothing in any Supreme Court opinion to suggest that the constitutional norms that remedial plans must adhere to are only federal constitutional norms or that a three-judge court, as was convened in both *White, see id.* at 787, and *Upham, see* 456 U.S. at

3

38, must turn a blind eye to state constitutional norms. Indeed, the rule is just the opposite – a federal court must honor state constitutional requirements in fashioning relief for federal constitutional violations in redistricting.

Equally applicable is the Supreme Court's decision in *Whitcomb v. Chavis*, 403 U.S. 124 (1971), where the Court held that the three-judge district court panel in that case erred in ordering the implementation of a redistricting plan that rejected all multi-member districts in the state absent a finding that those multi-member districts were unconstitutional. *Id.* at 160-161. This is despite the fact that the Supreme Court had previously held that "when district courts are forced to fashion apportionment plans, single-member districts are preferable to large multimember districts as a general matter." *Connor v. Johnson*, 402 U.S. 690, 692 (1971). In *Whitcomb,* the district court erred by failing to follow a state redistricting policy; failing to follow the state constitution is equally improper for a district court ordering a remedial plan. *See also Chapman v. Meier*, 420 U.S. 1, 19 (1975) (indicating that court-ordered plans should, in some circumstances, defer to, or respect, a state policy of multimember districting). Whether embodied in state constitutional law or state statute or long-standing state practices, a federal court remedying an unconstitutional redistricting plan must follow state redistricting policies.

Most recently the Supreme Court applied this principle to a three-judge court imposing interim redistricting plans for congressional and legislative districts for the 2012 elections in Texas. *See Perry v. Perez,* 565 U.S. 388, 393 (2012). In *Perry,* the

interim plans were required because the state's redistricting plans had not yet been precleared under Section 5 of the Voting Rights Act, 52 U.S.C. § 10304. The Supreme Court held that the district court's interim plans could not be used because in certain respects they failed to follow Texas state law and in other respects they deviated from the state's enacted plans in areas of the state where there was no allegation of discriminatory intent or effect. *Perry,* 565 U.S. at 396, 399. Most relevant here is the fact that the interim plans were drawn to minimize divided precincts, which the Supreme Court said was improper because "Texas law expressly allows recasting precincts when redistricting." *Id.* at 397. Thus, the federal court there was under an obligation to respect all state laws applicable to redistricting. This Court is under the same obligation.

Legislative Defendants' argument that this Court can only examine whether the 2017 remedial redistricting plans cure the racially gerrymandered districts begins by mischaracterizing Plaintiffs' position as simply disagreeing with the policy judgments of the General Assembly and wanting to substitute their own preferences. *See* Legislative Defs.' Resp. to Pls.' Objections 21, Sept. 22, 2017, ECF No. 192. Plaintiffs' Objections state with specificity the districts they contend are in violation of the state constitution. This is not a policy argument about which districts would be best for the citizens of North Carolina. Thus, *Perry v. Perez,* although relied upon by Defendants, actually supports Plaintiffs' position that remedial redistricting plans must adhere to state law, including state constitutional provisions, and this court would err by failing to examine whether the remedial plans violate the state constitution. *See Perry,* 565 U.S. at 397.

5

In short, Plaintiffs are not asking the Court to "displace" state policy judgments—rather, they are asking the Court to respect state policy judgments as reflected in the state constitution.

B. **There Are Numerous Examples of Federal Courts Examining Whether Remedial Plans Comply With All Applicable Laws**

Courts implementing remedial redistricting plans routinely examine whether those plans fully comply with all other legal requirements, both state and federal.[1] *See, e.g., Abrams v. Johnson*, 521 U.S. 74 (1997) (considering whether remedial plan imposed by three-judge court violated § 2 or § 5 of the Voting Rights Act or one person, one vote requirement, in addition to whether it cured original racial gerrymander); *Harris v. McCrory*, No. 1:13-cv-949, 2016 U.S. Dist. LEXIS 71853, at *5 (M.D.N.C. June 2, 2016) (rejecting defendants' argument that Court's review was limited to whether Congressional Districts 1 and 12 were constitutional and instead reviewing constitutionality of entire remedial plan); *Personhuballah v. Alcorn,* 155 F. Supp. 552, 563 (E.D. Va. 2016) (examining extent to which remedial plan complies with legislative policies and applicable federal law). Indeed, "while a court must not overreach when fashioning a remedy of its own, it must determine whether the legislative remedy enacted at its behest is in fact a lawful substitute for the original unconstitutional plan." *Harris,* 2016 U.S. Dist. LEXIS 71853, at *5.

---

[1] Plaintiffs previously addressed this issue at pages 17-19 and 33-35 of their Objections, will not repeat those arguments here, and incorporate those authorities herein by reference. *See* Pls.' Objections to Defs' Remedial Districts and Mem. of Law, 17-19, 33-35, Sept. 15, 2017, ECF No. 187 [hereinafter "Pls' Objections"].

In some cases a court finds that the proposed remedial plan is acceptable. For example, in *Marylanders for Fair Representation v. Schaefer*, 849 F. Supp. 1072 (D.Md. 1994), the court approved a remedial legislative plan, enacted following the finding of a § 2 violation, because it satisfied "all applicable constitutional and legal standards, federal and state." *Id.* at 1077. In other cases, trial courts have rejected remedies proposed by a jurisdiction because they are inconsistent with state law. *See Large v. Fremont Cty.*, 670 F.3d 1133 (10th Cir. 2012) (discussed at length in Pls' Objections 33-35); *Bodker v. Taylor*, Civ. A. No. 1:02-cv-999ODE, 2002 U.S. Dist. LEXIS 27447, at *5 (N.D. Ga. 2002) (court would not order jurisdiction's preferred redistricting plan where implementation of that plan would contravene state law). Similarly, proposed plans have been rejected because they embody a new constitutional violation. *See Navajo Nation v. San Juan Cty.*, No. 2:12-cv-00039, 2017 U.S. Dist. LEXIS 109786, at *23 (D. Utah July 14, 2017) (rejecting the county's proposed remedy because race predominated in the drawing of the districts). The court is "required to ensure that a legally-permissible remedy is devised." *United States v. City of Euclid*, 523 F. Supp. 2d 641, 644 (N.D. Ohio 2007). *See also Bone Shirt v. Hazeltine*, 461 F.3d 1011, 1022 (8th Cir. 2006) ("district court is responsible for developing a constitutional remedy").

A D.C. Circuit decision in a case from North Carolina also illustrates that a federal court, in reviewing remedial plans, must adhere to state law requirements. In *Cleveland Cty. Ass'n for Gov't by the People v. Cleveland Cty. Bd. of Comm'rs*, 142 F.3d 468, 477 (D.C. Cir. 1998), a consent decree that established a cumulative voting plan for the

Cleveland County Commissioners was challenged by intervenors. The court held that where the county did not admit a violation of the Voting Rights Act "the consent decree fails because state law prevents the Board from unilaterally agreeing to any change in its structure or method of election." *Id.* at 478. If the federal court had no obligation to enforce state law requirements, that decision would be wrong.

There simply is no precedent for the Legislative Defendants' position. In *McGhee v. Granville County*, 860 F.2d 110 (4th Cir. 1988), involving a statutory violation, the court held that when reviewing a jurisdiction's proposed remedial districts, a court must consider "whether the proffered remedial plan is legally unacceptable because it violates anew constitutional or statutory voting rights." *Id.* at 115. The parties in *McGhee* stipulated that the at-large method of electing Granville County Commissioners violated Section 2 of the Voting Rights Act but they could not agree on a remedy. *Id.* at 112. The trial court erred in rejecting the Defendant Commissioners' proposed seven-single member district plan because that plan met all applicable legal requirements. *Id.* at 115 ("we are satisfied that the County's remedial plan here met the relevant standards and that the district court therefore erred in declining to accept it"). The county's plan was appropriate not only because it remedied the at-large violation, but also because it was a legal plan under state and federal law.

Legislative Defendants' argument that this Court can only consider the extent to which their remedial plan remedies the racial gerrymandering violation is directly contrary to the *McGee* court's holding that a court must consider whether the proposed

8

plan violates anew constitutional or statutory rights. Their misplaced reliance on the discussion in footnote 10 of the opinion confuses the unique nature of vote dilution claims with the very different argument that Plaintiffs here are making. *See* Leg. Defs.' Br. at 25. That footnote addresses the fact that a single-member district remedy will not result in all black voters in a jurisdiction being in a majority-black district and in that sense, experiencing a remedy. *McGhee,* 860 F.2d at 119 n.10. Here, Plaintiffs are arguing that the remedial districts violate the state constitution. This court is bound to follow state constitutional requirements in ordering a remedial plan and nothing in *McGhee* suggests that it is not.

One need look no further than the U.S. Supreme Court's opinion in this case for the proposition that in exercising its remedial authority, the Court must implement a redistricting plan that follows state law. Noting that a court must "act with proper judicial restraint when intruding on state sovereignty," *North Carolina v. Covington,* 581 U.S. ___, 137 S. Ct. 1624, 1626 (2017) (per curiam), the Supreme Court explained that:

> Relief in redistricting cases is "'fashioned in the light of well-known principles of equity.'" A district court therefore must undertake an "equitable weighing process" to select a fitting remedy for the legal violations it has identified, taking account of "'what is necessary, what is fair, and what is workable,'"

*Id.* at 1627 (citations omitted). If this Court were to approve the implementation of remedial districts that violate the North Carolina Constitution, the intrusion on state sovereignty would be significant. State constitutional standards governing legislative redistricting surely provide a guide to what is necessary, fair and workable in this context.

9

Imagine if the legislature had enacted a new redistricting plan that provided for 80 state house districts and 35 state senate districts, contrary to the state constitutional requirement of 120 Representatives and 50 senators. *See* N.C. Const. Art. 2, §§ 2 & 4. This court would not be bound to order that plan into effect because it could only examine whether the plan cured the racial gerrymander. The state constitutional violations that Plaintiffs contend exist in the 2017 redistricting plans are no less important for this court to adjudicate.

### C. The Three-Judge Court has Jurisdiction to Ensure the Remedial Plan Complies with All Applicable State and Federal Laws.

Many of the cases discussed above involve three-judge courts that acknowledge their responsibility to ensure that remedial plans comply with all applicable legal standards. The Legislative Defendants' argument strays even further afield of any relevant precedent when suggesting that the court has no jurisdiction to ensure the remedial plan complies with the state constitution because it is a three-judge court empowered only to hear claims that fall within the statutory language of 28 U.S.C. § 2284. Only one of the cases cited by Legislative Defendants involves redistricting claims and none address a court's responsibilities at the remedial stage.

This Court has jurisdiction pursuant to 28 U.S.C. § 2284 (a) which states that "[a] district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." There is nothing in the statute to suggest that the court has no authority to

determine whether a remedial redistricting plan complies with state law. Rather, the Supreme Court has recently held, in a redistricting case, that "§2284(a) admits of no exception, and "the mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion." *Shapiro v. McManus*, 136 S. Ct. 450, 454 (2015) (quoting *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U. S. 26, 35, (1998)). This case must be heard by a three-judge court and that court must impose a legal remedy.

Legislative Defendants' arguments here again mischaracterize Plaintiffs' position. They suggest that Plaintiffs are asserting new claims, as though Plaintiffs' objections were a new lawsuit in which Plaintiffs would have the burden of proof. In fact, this is the remedial stage of a case where the Defendants have the burden of proving that their proposed remedial plan is an acceptable remedy. *See* Pls.' Objections 19-20.

Legislative Defendants' reliance on *Robertson v. Bartels,* 148 F. Supp. 2d 443 (D.N.J. 2001) is puzzling to say the least. *Robertson* dealt with whether the court could entertain a particular claim, not what should be done at the remedial stage of the litigation. Moreover, in that case the court pointed out that a Section 2 claim brought against the same redistricting plan would be sufficiently intertwined to be heard by a three-judge court, quoting the Third Circuit decision in *Page v. Bartels*:

> We conclude that because statutory Voting Rights Act challenges to statewide legislative apportionment are generally inextricably intertwined with constitutional challenges to such apportionment, those claims should be considered a single 'action' within the meaning of § 2284(a). Thus, when a single district judge is presented with both types of claims, he or she may not resolve the Voting Rights Act issues in isolation while reserving the constitutional claims to a three-judge district court; rather, the single district

11

judge should adhere to the limitations on his authority imposed by § 2284(b)(3).

*Page v. Bartels,* 248 F.3d 174 (3rd. Cir. 2001). Even if the "inextricably intertwined" standard applied here, which it does not because this is a remedial proceeding, certainly whether a remedial redistricting plan is constitutional under the state constitution is intertwined and part of a single action concerning Plaintiffs' racial gerrymandering claim.

*Perez v. Ledesma,* 401 U.S. 82 (1971) is equally inapplicable. Decided before the jurisdictional statute was amended in 1976 to substantially curtail the circumstances under which a three-judge court is required, it stands for the completely unremarkable proposition that a three-judge court cannot be convened to consider the constitutionality of a local ordinance. *Id.* at 86.

### III. CONCLUSION

Legislative Defendants' argument that this court cannot consider whether the 2017 redistricting plans they have enacted fully comply with the North Carolina Constitution turns redistricting law on its head. In fact, the Court has a duty to defer to state law and to ensure that any remedy it orders is fully consistent with the state constitution.

Respectfully submitted this 10th day of October, 2017.

| | |
|---|---|
| **POYNER SPRUILL LLP** | **SOUTHERN COALITION FOR SOCIAL JUSTICE** |
| By: /s/ Edwin M. Speas, Jr.<br>Edwin M. Speas, Jr.<br>N.C. State Bar No. 4112<br>espeas@poynerspruill.com<br>Caroline P. Mackie<br>N.C. State Bar No. 41512<br>cmackie@poynerspruill.com<br>P.O. Box 1801 (27602-1801)<br>301 Fayetteville St., Suite 1900<br>Raleigh, NC 27601<br>Telephone: 919-783-6400<br>Facsimile: 919-783-1075<br><br>*Counsel for Plaintiffs* | By: /s/ Anita S. Earls<br>Anita S. Earls<br>N.C. State Bar No. 15597<br>anita@southerncoalition.org<br>Allison J. Riggs<br>N.C. State Bar No. 40028<br>allisonriggs@southerncoalition.org<br>1415 Highway 54, Suite 101<br>Durham, NC 27707<br>Telephone: 919-794-4198<br>Facsimile: 919-323-3942<br><br>*Counsel for Plaintiffs* |

# CERTIFICATE OF SERVICE

I hereby certify that on this date I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will provide electronic notification of the same to the following:

| | |
|---|---|
| Alexander M. Peters<br>Special Deputy Attorney General<br>Office of the Attorney General<br>P.O. Box 629<br>Raleigh, NC 27602<br>apeters@ncdoj.gov<br><br>*Counsel for Defendants State of North Carolina and State Board of Elections* | Thomas A. Farr<br>Phillip J. Strach<br>Michael D. McKnight<br>Ogletree, Deakins, Nash, Smoak & Stewart, P.C.<br>4208 Six Forks Road, Suite 1100<br>Raleigh, NC 27602<br>thomas.farr@ogletreedeakins.com<br>phillip.strach@ogletreedeakins.com<br>michael.mcknight@ogletreedeakins.com<br><br>*Counsel for Legislative Defendants* |

This 10th day of October, 2017.

                                                                   */s/ Anita S. Earls*
                                                                   Anita S. Earls

                                                                   *Counsel for Plaintiffs*

## CERTIFICATE OF WORD COUNT

I certify that the foregoing **Plaintiffs' Reply Brief on Scope of Review at the Remedy Stage** contains 3,099 words as counted by the word count feature of Microsoft Word 2016, and thereby complies with Local Rule 7.3(d)(1) and this court's Text Order of October 5, 2017.

This 10th day of October, 2017.

                                                 */s/ Anita S. Earls*
                                                 Anita S. Earls