IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SANDRA LITTLE COVINGTON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | 1:15CV399 |
| | ) | |
| THE STATE OF NORTH CAROLINA, et al., | ) | |
| Defendants. | ) | |

## SPECIAL MASTER'S CORRECTED DRAFT PLAN AND ORDER

On November 1, 2017, the United States District Court for the Middle District of North

Carolina appointed me as Special Master in the above captioned case. (Doc. 206) In the order

appointing a Special Master, the Court expressed "serious concerns" with the redistricting plans

for the North Carolina Senate and House of Representatives passed by the General Assembly on

August 31, 2017 ("2017 plans"). The Court ordered the Special Master to develop, by December

1, 2017, redistricting plans that addressed these concerns, which related to the 2017 plans'

potential violations of the United States and North Carolina Constitutions.

Provided herein are draft redistricting plans and summary explanations of the principles

that guided their creation. The Special Master is releasing these draft plans in the immediate

wake of the defendants identifying, also pursuant to the November 1st order, the residences of

incumbents who will be running for reelection. As described further below, these draft plans are

provided at this early date to give the parties time to lodge objections and to make suggestions,

as to unpairing incumbents or otherwise, that might be accommodated in the final plan to be

delivered to the Court by December 1. Accompanying the final plan will be a report providing

greater detail as to the plan's compliance with applicable law, a more complete explanation of

1

the rationale for the Special Master's Plan, and evaluation of the plan according to the metrics required by the Court's order. The shapefiles and census block equivalency files for these draft plans have been provided to the Court through its public ECF system. Statewide maps of the Special Master's Draft Plan are attached at the end of this document.

## The Charge to the Special Master

The Court has ordered the Special Master to develop a plan that remedies specific legal violations in a limited number of districts. It has not empowered the Special Master to develop a redistricting plan for the entire state, nor has it authorized the Special Master to exercise unbounded discretion in order to remedy the unconstitutional districts. Rather, the Court has ordered the Special Master to redraw Enacted 2017 State Senate Districts 21 and 28 and State House Districts 21 and 57 in order to remedy those districts' violation of the Equal Protection Clause of the Fourteenth Amendment. It has also ordered redrawing of Enacted 2017 State House Districts 36, 37, 40, 41, and 105 because the General Assembly, in redrawing those districts in the 2017 Plan, may have violated the provision of the North Carolina State Constitution prohibiting redistricting more than once a decade.

In formulating a remedial plan, the Special Master is constrained by the applicable law and redistricting principles that guide remedial plans of this type. In its November 1st Order, the Court set forth the principles that would define the Special Master's plan:

a.  Redraw district lines for the Subject Districts and any other districts within the applicable 2017 county grouping necessary to cure the unconstitutional racial gerrymanders. As to House District 57, the redrawn lines shall also ensure that the unconstitutional racial gerrymanders in 2011 Enacted House Districts 58 and 60 are cured. As to 2011 Enacted House Districts 33, 38, 99, 102, and 107, no 2011 Enacted House Districts which do not adjoin those districts shall be redrawn unless it is

2

necessary to do so to meet the mandatory requirements set forth in Paragraphs 2(b) through 2(e) of this Order, and if the Special Master concludes that it is necessary to adjust the lines of a non-adjoining district, the Special Master shall include in his report an explanation as to why such adjustment is necessary.

b. Use the 2010 Federal Decennial Census Data;

c. Draw contiguous districts with a population as close as possible to 79,462 persons for the House Districts and 190,710 persons for the Senate Districts, though a variance up to +/- 5% is permitted and authorized if it would not conflict with the primary obligations to ensure that remedial districts remedy the constitutional violations and otherwise comply with state and federal law, would enhance compliance with state policy as set forth in subsection (f) below, and would not require redrawing lines for an additional district.

d. Adhere to the county groupings used by the General Assembly in the 2017 Enacted Senate and House Plans;

e. Subject to any requirements imposed by the United States Constitution or federal law, comply with North Carolina constitutional requirements including, without limitation, the Whole County Provision as interpreted by the North Carolina Supreme Court.

f. Make reasonable efforts to adhere to the following state policy objectives, so long as adherence to those policy objectives does not conflict with the primary obligations of ensuring that remedial districts remedy the constitutional violations and otherwise comply with state and federal law:

    i. Split fewer precincts than the 2011 Enacted Districts;

    ii. Draw districts that are more compact than the 2011 Enacted Districts, using as a guide the minimum Reock ("dispersion") and Polsby-Popper ("perimeter") scores identified by Richard Pildes & Richard Niemi, Expressive Harms, "Bizarre Districts," and Voting Rights: Evaluating Election-District Appearances After Shaw v. Reno, 92 Mich. L. Rev. 483 (1993); and

    iii. Consider municipal boundaries and precinct lines.

g. After redrawing the districts, in view of the policy decision by the General Assembly that efforts to avoid pairing incumbents are in the interest of North Carolina voters, the Special Master may adjust district lines to avoid pairing any incumbents who have not publicly announced their intention not to run in 2018, but only to the extent that such adjustment of district lines does not interfere with remedying the constitutional violations and otherwise complying with federal and state law. Additionally, the Special Master shall treat preventing the pairing of incumbents as "a distinctly subordinate consideration" to the other traditional redistricting policy objectives followed by the State. Ga. State Conf. of NAACP v. Fayette Cty. Bd. of Comm'rs, 996 F. Supp. 2d 1353, 1363 (N.D. Ga. 2014) (collecting cases).

h.    Except as authorized in Paragraph 2(g), the Special Master shall not consider incumbency or election results in drawing the districts.

Underlying the Court's prohibition on examining election returns or prioritizing incumbency is reliance on a bedrock principle that the Special Master's Plan shall be constructed in a nonpartisan fashion. This is not to say that the plan will not have partisan, incumbency-related, or other electoral effects – all redistricting plans do. Rather, the principles that guide the production of the plan must be nonpartisan in nature and the changes to the districts must be explainable on that basis. The Special Master's Draft Plan was drawn without consideration of the location of incumbents' residences, so that the incorporation of incumbency in the final plan can be achieved on a nonpartisan basis. As explained further in the order at the conclusion of this document, the parties are asked to propose alterations to the Special Master's Draft Plan to incorporate incumbency. However, the final plan will only accommodate such changes if they do not degrade the underlying features of the plan as expressed in the Court's November 1st Order.

**Summary Explanation of Districts in the Special Master's Draft Plan**

*Senate Districts 19 and 21*

The Court struck down District 21 in the 2011 Senate Plan as a violation of the Fourteenth Amendment's prohibition on excessive race consciousness in districting. The Court continues to have serious constitutional concerns with the district as redrawn in 2017. The Special Master's Draft Plan attempts to remedy the suspected constitutional infirmity by removing any residuum of racial predominance that may have been expressed in the 2017 configuration of the district.

As newly drawn in the Special Master's Draft Plan, District 21 is a compact district spanning Hoke and Cumberland counties. By moving north and taking in Spring Lake, District 21 avoids the jutting arm into Fayetteville that characterizes the 2017 version of the district. It is constructed of whole precincts – not a single one is divided in the construction of this district. It takes in the entire town of Spring Lake (as defined by the boundaries identifying it as a "Census Designated Place" or CDP) and just enough of Fayetteville so as to comply with one person one vote. The boundaries of the district are determined by the shape of the precinct boundaries.

## North Carolina Senate: Hoke and Cumberland Counties

### 2011 Plan



### 2017 Plan

### Special Master's Draft Plan

*Senate District 28 and the surrounding districts in Guilford County*

For similar reasons explained above as to District 19, the Court struck down the 2011 version of Senate District 28 and continues to harbor constitutional concerns as to racial predominance with regard to the district's 2017 configuration. As expressed in the Special Master's draft plan, the newly configured district is a compact district -- almost a perfect circle, which is the shape privileged by the Roeck and Polsby-Popper compactness measures features in the Court's Order. The newly drawn district is contained almost completely within the city (CDP) of Greensboro, and is made up of whole precincts. 2017 Enacted District 26 remains untouched, per the Court's order that the Special Master's Plan may only alter districts necessary to remedy the legal infirmity of the subject districts. District 24 is slightly changed by moving west to the Greensboro CDP border to accommodate the new boundaries of District 28. District 27 "retreats" from most of central Greensboro so as to contain much of the outskirts of Greensboro along with nearby towns of Summerfield, Oak Ridge and Stokesdale.

# North Carolina Senate: Guilford County

## 2011 Plan



## 2017 Plan



## Special Master's Draft Plan



*House Districts 21 and 22*

As with the Senate Districts described above, the Court struck down House District 21 as a violation of the Equal Protection Clause of the Fourteenth Amendment. Because of the district's continued non-compactness, the Court's concerns as to excessive race-consciousness appear to remain in Enacted 2017 District 21. The Special Master's Draft Plan addresses this lack of compactness by smoothing out the border in Sampson County, thereby avoiding the selective inclusion of heavily African American precincts that characterized the 2011 and 2017 versions of the district. The District continues to retain its configuration in Wayne County, which is principally defined by the boundaries of Goldsboro. Because Districts 21 and 10 approach the upper limit (exactly five percent deviation) of what is permissible under one-person, one-vote, a few precincts needed to be split in Sampson, but are configured in such a way as to maximize the compactness of the district.

9

# North Carolina House: Bladen, Sampson and Wayne Counties

## 2011 Plan



## 2017 Plan



## Special Master's Draft Plan



*House District 57 and Surrounding Districts in Guilford County*

The Court continues to harbor concerns as to the constitutionality of Enacted 2017 House District 57. Because the District retains a backwards "L shape" along the eastern side of Greensboro, according to the Court, it perpetuates the racial predominance of its predecessor district by over-concentrating the African American population in the area. The Special Master's Draft Plan addresses the legal infirmity in this district by moving the district north and west so as to create a compact district in north Greensboro.

The directions from the Court with respect to redrawing this district are more specific than for others in the remedial plan. "As to House District 57," the Court's Order directs, "the redrawn lines shall also ensure that the unconstitutional racial gerrymanders in 2011 Enacted House Districts 58 and 60 are cured." This direction presents additional constraints as to how the districts adjoining District 57 must be drawn. In particular, there is a danger that once District 57 moves north, that the districts below it will move north and assume a similar configuration to those struck down in the 2011 plan. In addition, because District 60 does not abut the Subject District and therefore need not be redrawn, it places a "floor" that determines the shape of the remaining districts in Greensboro.

Districts 58 and 61 in the Special Master's Draft Plan, therefore, move from southeast to northwest, but remain entirely within the CDP of Greensboro. Their configuration is determined by four factors: (1) avoiding replication of the constitutional defects in the analogous 2011 districts; (2) staying within the boundaries of Greensboro, (3) not altering the boundaries of District 60, and (4) doing so by not splitting any new precincts with the redrawn districts. District

11

59 retains most of its current configuration, except that it now more closely "hugs" the southern border of Greensboro. Because newly redrawn District 57 moves northwest, it "pushes" District 62 west and south along the border with Forsyth County thereby taking up the territory there that had been included in 2017 Enacted District 61.

# North Carolina House: Guilford County

## 2011 Plan



## 2017 Plan



## Special Master's Draft Plan



*Wake County Districts*

The legal infirmity in the districts in Wake County and Mecklenburg County is characteristically different than those in the previous districts described and therefore requires a different type of remedy. The Court has not called into question any of the 2017 districts that themselves were redrawn to address the racial predominance in their prior incarnation. Rather, in those two counties, the Court has called into question under the state constitution the 2017 Enacted Districts that were unnecessarily redrawn to address constitutional infirmities as to racial predominance in several of the 2011 Enacted Districts. In Wake County, the districts deemed unnecessary to be redrawn are 2011 House Districts 36, 37, 40 and 41. By redrawing those districts, which did not adjoin the unconstitutional districts in Wake County, the plan raises concerns for the Court under the provision of the state constitution that prohibits redistricting more than once a decade.

To address this violation of the state constitution, the Court has ordered the Special Master to recreate the 2011 House Districts 36, 37, 40 and 41. Once redrawn, it becomes necessary to reallocate populations among the districts that did, in fact, adjoin the previously unconstitutional districts. Reinstating the old districts, most of which adhere to the county boundary, provides an exterior frame within which the reallocation of population must occur. The remaining Enacted 2017 districts are the basemap from which the Special Master's Draft Plan is created, but significant redrawing must occur in some districts because of the "leftover" population that remains once the 2011 districts are reinstated. For the most part, the configurations of the districts are determined by moving District 33 to the county border and then shifting the remaining interior districts clockwise until they achieve population equality. By reinstating the 2011 districts, several precincts are now split that were not under the 2017 plan.

However, the Special Master's Draft Plan does not add any more split precincts and in, fact,

recombines some precincts that were split with the 2011 or 2017 plan.

# North Carolina House: Wake County

## 2011 Plan



## 2017 Plan



## Special Master's Draft Plan



Case 1:15-cv-00399-TDS-JEP   Document 213   Filed 11/14/17   Page 16 of 29

*Mecklenburg County Districts*

The dynamic in Mecklenburg County is the same as in Wake, but fewer districts need to be redrawn to address the 2017 Enacted Plan's violation of the state constitution. Only 2017 Enacted District 105 raised concerns for the Court and needs to be reinstated. As a result, only 2017 Enacted Districts 92, 103, 104, and 105 need to be redrawn to cure the state constitutional violation. As District 105 moves south, Districts 92, 103, and 104 move into the territory closest to each one of those districts. The exact configurations are determined by a decision to keep precincts whole (outside of those already broken by 2011 Enacted District 105), to keep the districts in the area relatively compact and contiguous, and to make only the changes necessary to remedy the constitutional violation.

# North Carolina House: Mecklenberg County

## 2011 Plan



## 2017 Plan



## Special Master's Draft Plan



## ORDER

1.  The parties are ordered to submit to the Special Master proposed objections and revisions to the Special Master's Draft Plan by November 17, 2017. Briefs are limited to 25,000 words. In particular, the parties are encouraged to include in these submissions suggestions as to how incumbents shall be unpaired without degrading the underlying features of the plan, as specified in the Court order. The parties shall also then specify any disagreements they have as to which incumbents are seeking reelection in 2018. Reply briefs shall be submitted by November 21, 2017 and shall not exceed 10,000 words. In their replies, the parties are encouraged to identify which proposed changes of the plaintiffs and defendants, if any, are jointly supported by the parties.

2.  The parties are further ordered to supply to the Special Master by November 14, 2017, in electronic form, a geographic layer to be incorporated into Maptitude for Redistricting, that includes and identifies the location of the residences of all current incumbents in the North Carolina General Assembly.


SO ORDERED, this the 13th day of November, 2017.


_____/s/_____
Nathaniel Persily
Special Master

# EXHIBITS



# North Carolina Senate 2011 Enacted Plan

Cumberland and Hoke Counties

Guilford County

# North Carolina Senate 2017 Enacted Plan



Cumberland and Hoke Counties

Guilford County

# North Carolina Senate Special Master's Draft Plan



Cumberland and Hoke Counties

Guilford County

# North Carolina House 2011 Enacted Plan



# North Carolina House 2011 Enacted Plan



# North Carolina House 2017 Enacted Plan



# North Carolina House 2017 Enacted Plan



# North Carolina House Special Master's Draft Plan



# North Carolina House Special Master's Draft Plan

