SANDRA LITTLE COVINGTON, *et al.,*

*Plaintiffs,*

v.

THE STATE OF NORTH CAROLINA, *et al.,*

*Defendants.*

CIVIL ACTION NO.
1:15-CV-399

## PLAINTIFFS' RESPONSE IN OPPOSITION TO LEGISLATIVE DEFENDANTS' EMERGENCY MOTION TO STAY PENDING SUPREME COURT REVIEW AND REQUEST FOR EXPEDITED RULING

Legislative Defendants seek a stay, pending Supreme Court review, of the Court's January 19, 2018 Memorandum Opinion and Order (the "Order"), ECF No. 242, which ordered the implementation of the State's 2017 Plan as modified by the Special Master's Recommended Plan. Leg. Defs.' Emerg. Mot. to Stay Pending S. Ct. Rev. & Req. for Exp. Rul'g (hereinafter the "Motion"), Jan. 21, 2018, ECF No. 243. Pursuant to Local Rule 7.2 and the Court's January 22, 2018 order setting the deadline for responsive briefing, ECF No. 244, the Plaintiffs submit the following response brief in opposition to the Motion.

### INTRODUCTION

That North Carolina's 2011 legislative districts encompassed widespread, unconstitutional racial gerrymandering is a well-settled fact that has already been affirmed by the highest court in the land. An adequate remedy is now long overdue, and Plaintiffs and other voters of North Carolina are entitled to participate in their first

1

constitutional state legislative election this decade. This Court has taken due care to ensure that its Order provides such an adequate remedy while respecting the policy judgments of the people of North Carolina. The request for a stay should be denied, as this Court's well-reasoned Order has already established that Legislative Defendants' legal arguments are groundless and unlikely to prevail on appeal. Further, when balancing the equities, it is clear that granting the stay would only serve to prolong and exacerbate the constitutional harms from which Plaintiffs have suffered for the better part of the decade. In contrast, the slight administrative inconvenience of implementing a handful of new districts in time for the opening of the filing period—but nearly five months before the regularly scheduled primary election—cannot justify subjecting North Carolinians to yet another election under unconstitutional maps.

## ARGUMENT

Defendants bear a "heavy burden" in seeking the "extraordinary remedy" of a stay pending appeal. *Larios v. Cox*, 305 F. Supp. 2d 1335, 1336 (N.D. Ga. 2004). This burden is no less heavy or exacting in the redistricting context. *Personhuballah v. Alcorn*, 155 F. Supp. 3d 552, 558 (E.D. Va. 2016). Legislative Defendants must show four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). Defendants have failed to meet their "heavy burden" on each of these factors.

2

## I. Legislative Defendants Cannot Establish a Likelihood of Success on the Merits

The Supreme Court of the United States has already unanimously affirmed this Court's finding that twenty-eight districts in the 2011 state legislative plans were unconstitutional racial gerrymanders in need of a remedy. *See North Carolina v. Covington,* 137 S. Ct. 2211 (2017) (mem.). And it is the "unusual case in which a court would be justified in not taking appropriate action to ensure that no further elections are conducted under the invalid plan." *Reynolds v. Sims,* 377 U.S. 533, 585 (1964). This Court, therefore, acted in accordance with its duty to ensure that a "constitutionally acceptable" remedy is implemented in time for the 2018 election by first allowing the General Assembly the opportunity to draft a remedial map, and subsequently appointing a special master to narrowly adjust that map where it failed to cure the constitutional violation or exceeded the court's remedial order. *Chapman v. Meier,* 420 U.S. 1, 27 (1975); *see also Upham v. Seamon,* 456 U.S. 37 (1982) (noting that it would be error for a court-drawn plan to "reject[] state policy choices more than . . . necessary to meet the specific constitutional violations involved"). The Order is limited in scope: it respects state policy judgments by approving all but 9 of the 116 districts as drawn by the legislature in 2017. With respect to the nine districts at issue, the Court has simply reinstated the legislature's 2011 versions for five districts and remedied the continuing constitutional violations in four districts. The Order could hardly be more limited and respectful of the legislature's choices.

Legislative Defendants' critiques of this Court's Order as presented in their Motion are no more compelling now than they were when originally argued. As a threshold matter, this Court has already carefully and thoroughly considered Legislative Defendants' argument that it lacked jurisdiction to evaluate Legislative Defendants' remedial attempt "because this case became moot as soon as the legislature repealed the 2011 plans and replaced them with the 2017 plans," Motion at 5-6, and found it to be not only baseless, but contrary to the established precedent of both this Circuit and the United States Supreme Court. Order at 21-24. The authority and duty of federal courts to oversee remedial proceedings following the findings of constitutional violations cannot seriously or credibly be questioned. *Chapman*, 420 U.S. at 27 (1975) (if a state legislature fails to enact a "constitutionally acceptable plan," then "the responsibility falls on the District Court").

Additionally, Legislative Defendants in essence ignore the remedial posture of this case in asserting that this Court should have treated "the race-neutral line-drawing as dispositive," Motion at 6, or should have "attempt[ed] to analyze whether the shape of the 2017 districts was dictated by the legislature's legitimate use of election data and not race." *Id* at 7-8. As the Supreme Court has unequivocally established, and as this Court explained, a remedy to a constitutional violation must "so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future," *Louisiana v. United States,* 380 U.S. 145, 154 (1965), *see also* Order at 22, 35, 43. This Court rightly recognized that unlike a redistricting plan implemented following a decennial census that is afforded the presumption of validity, a redistricting plan drafted

4

to replace a plan that has been found constitutionally infirm must be carefully scrutinized to ensure all such infirmities have been cured. Order at 36 (collecting cases).

Moreover, Legislative Defendants' assertions that the decision to not use race data, even while retaining the cores and, indeed, the bizarre shapes of the districts the United States Supreme Court unanimously agreed were unconstitutionally racially gerrymandered, insulates even remedial districts from judicial scrutiny would produce an absurd result. If that were legally plausible, a state found to have racially gerrymandered could, during a remedial redrawing, "turn off" the race button on the redistricting software, and re-enact the same districts. That cannot possibly be the law.

Finally, Legislative Defendants' arguments regarding the unnecessarily redrawn House districts in Wake and Mecklenburg counties are unavailing. There can be no doubt that the state may only redraw districts mid-decade to cure a constitutional violation found by a court. N.C. Const. art. II, §§ 3(4), 5(4); *Granville Cty. Comm'rs v. Ballard*, 69 N.C. 18, 20-21 (1873). Taken to its logical conclusion, as this Court has recognized, Order at 28, Legislative Defendants' argument would allow the legislature to redraw the entire map without consequence. The North Carolina Constitution limits the legislature's ability to do just that, and Legislative Defendants have made no contrary showing.

Thus, Legislative Defendants have failed to demonstrate any likelihood that the care and consideration that has culminated in this Court's January 19 Order will be reversed.

## II. Granting a Stay Will Prolong and Exacerbate Irreparable Injury Suffered by Plaintiffs and Is Contrary to the Public Interest

Plaintiffs and millions of North Carolina voters have already suffered years of irreparable harm as a result of the unconstitutional 2011 state legislative plans, and a stay in this case would all but guarantee that these harms endure yet another election cycle. The right to vote is undeniably fundamental in a free and fair society. *See Wesberry v. Sanders,* 376 U.S. 1, 17 (1964). "Other rights, even the most basic, are illusory if the right to vote is undermined," *id.*, and any impediment on this fundamental right constitutes irreparable injury. *See League of Women Voters of NC v. North Carolina,* 769 F.3d 224, 247 (4th Cir. 2014); *see also Reynolds,* 277 U.S. at 555 ("The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government."). And while all impediments to voting cause irreparable injury, the Supreme Court has held that racial gerrymandering, in particular, "is altogether antithetical to our system of representative democracy." *Shaw v. Reno,* 509 U.S. 630, 648 (1993). To implement a stay now, after the Supreme Court has unanimously agreed that North Carolina voters have been unconstitutionally segregated for three election cycles and after the Legislature has resisted all attempts to develop remedial plans at an even earlier date, July 27, 2017 Mot. Hearing Trans. at 86:4-7, 88:1-89:2, would almost certainly foreclose the possibility of a 2018 remedy.

To allow Legislative Defendants to characterize this Court's remedial actions as "last minute" and "on the eve of the filing period," Motion at 4, would reward Legislative

Defendants' *years* of delay tactics with "the fruits of victory for another election cycle." *Larios v. Cox,* 305 F. Supp. 2d 1335, 1344 (N.D. Ga. 2004). As this Court has observed, any alleged harm to Legislative Defendants based upon the timing is a result of their own delay and inaction. *See* Order at 7 (noting the General Assembly waited nearly two months after the Supreme Court affirmance to begin the redrawing process). Indeed, in just July of last year, Legislative Defendants acknowledged that there would be ample time to implement remedial districts even if this Court did not conduct its remedial review until January of 2018. Leg. Defs.' Position on Remedy, July 6, 2017, ECF No 161 at 29 (stating the legislature was positioned to "enact[] new plans by the end of the year, which would leave time for this Court's review and implementation of the plans in an orderly way in 2018."). There is no need, then, to disrupt a long-overdue remedy for plans approved on a timeline consistent with one already endorsed by Legislative Defendants.

It is in the public's interest for this Court to deny the stay. "The public has an interest in having . . . representatives elected in accordance with the Constitution. *Personhuballah v. Alcorn,* 155 F. Supp. 3d 552, 560-61 (E.D. Va. 2016). *See also Purcell v. Gonzales,* 549 U.S. 1, 4 (2006) (noting that plaintiffs have a "strong interest in exercising the fundamental political right to vote") (internal quotations and citations omitted); *Newsome v. Albermarle Cnty. Sch. Bd.,* 354 F.3d 249, 261 (4th Cir. 2003) ("upholding constitutional rights serves the public interest"). Allowing the State's 2017 plan, as slightly modified by the Special Master's Recommended plan, to go into effect will both prevent further irreparable harm to Plaintiffs and best serve the public interest

7

of voters in North Carolina, who deserve to finally elect legislators who feel accountable not only to "one racial group," but rather to "their constituency as a whole." *Shaw,* 509 U.S. at 648.

### III. The State's Administrative Inconvenience Does Not Justify Condemning Plaintiffs to Yet Another Election Under an Unconstitutional Plan

Bearing in mind the grave constitutional injury that Plaintiffs have suffered, and will continue to suffer absent a denial of Legislative Defendants' Motion, the mere administrative inconveniences that Legislative Defendants recount cannot justify again delaying this long overdue remedy. *See Buchanan v. Evans,* 439 U.S. 1360, 1361 (1978) (in considering a stay, the court "should balance the equities" to "determine on which side the risk of irreparable injury weighs most heavily") (citation omitted). First, Legislative Defendants—as applicants—have made no showing that *they* will be irreparably harmed. They state that "North Carolina's sovereign interests" are harmed, but fail to explain any harm that they as leaders of the General Assembly will suffer. Motion at 4. In fact, it is the State Defendants who presumably will bear the administrative burden of implementing the new districts, and they have not joined in this motion.[1]

Second, it is highly unlikely that "voters and candidates have become accustomed to the 2017 plans and have been making electoral plans using those districts," Motion at 4, given the fact that those plans have been publicly challenged as inadequate since their

---

[1] Furthermore, Legislative Defendants have represented to this Court that they lack the authority to represent the interests of the General Assembly, let alone the sovereign interests of the State as a whole. Leg. Defs.' Resp. to Special Master's Draft Report at 5, ECF No. 215.

first proposal not even five months ago. *See* Pls.' Objs. to Defs.' Remedial Districts and Mem. of Law, Sept. 15, 2017, ECF No. 187. However, even if true, only a mere fraction of all voters and candidates will be affected by the Court's order, as objections were sustained against only 9 of the 116 proposed remedial districts, and thus the overwhelming majority of legislatively-enacted districts will remain entirely unchanged by the Court's order.

Further, Legislative Defendants' characterization of this order as coming so late as to create a risk of voter confusion and disincentive to vote, Motion at 4, is contrary to logic and their own assertions to this Court. Though the filing period is currently set to open on February 12, 2018 (which the legislature is within its power to postpone if deemed truly necessary), the primary is not set to take place until May 8, 2018—nearly five months from the issuance of this Court's order. *See* N.C. Gen. Stat. § 163A-700(b) (establishing primary elections for state legislators to be held "on Tuesday next after the first Monday in May preceding each general election . . . "). In contrast, in *Purcell,* which Legislative Defendants cite as support for their contention that voter confusion and defection will result absent a stay, only one month stood between the issuance of the district court's injunction and the upcoming <u>general</u> election. 549 U.S. at 3. Additionally, at the July 27, 2017 hearing on remedy, Legislative Defendants assured this Court that it would have plenty of time to implement any new districts in time for the 2018 election, even if the legislature did not enact its own districts for this Court's review until *mid-November,* a month and a half later than they were actually submitted. July 27, 2017 Mot. Hearing Trans. at 86:4-7, 88:1-89:2.

In any event, the inconvenience of "reassessing or rearranging plans," Motion at 4, does not rise to the level of injury that courts have considered irreparable and sufficient to justify a stay. *Conkright v. Frommert*, 556 U.S. 1401, 1403 (2009) ("[m]ere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay are not enough.") (Ginsburg, J. in chambers) (quotation marks omitted); *see also Johnson v. Mortham*, 926 F. Supp. 1540, 1542 (N.D. Fla. 1996) (having to redistrict is a "mere administrative inconvenience"); *Cane v. Worcester Cty.,* 874 F. Supp. 695, 698 (D. Md. 1995) ("the time and expense of implementing a new system" is an "injury [that] is not irreparable"). And it certainly does not outweigh the constitutional injury inflicted on Plaintiffs' fundamental right to vote. *See Taylor v. Louisiana*, 419 U.S. 522, 535 (1975) (administrative concerns cannot justify infringement upon a fundamental right).

## CONCLUSION

Legislative Defendants cannot establish a likelihood of success on the merits, nor do the burdens they assert rise to the level of irreparable harm. Given the ongoing, irreparable constitutional harm to Plaintiffs and to voters across North Carolina as a result of the unconstitutional 2011 plan and the legislature's delay tactics intended to "prolong the harm that plaintiffs have [already] suffered," *Larios,* 305 F. at 1344, Plaintiffs respectfully submit that the Court should deny Defendants' motion and allow the State's 2017 Plan as modified by the Special Master's Recommended Plan to go into effect.

Respectfully submitted this the 23rd day of January, 2018.


**POYNER SPRUILL LLP**

By:  /s/ Edwin M. Speas, Jr.
     Edwin M. Speas, Jr.
     N.C. State Bar No. 4112
     espeas@poynerspruill.com
     Caroline P. Mackie
     N.C. State Bar No. 41512
     cmackie@poynerspruill.com
     P.O. Box 1801 (27602-1801)
     301 Fayetteville St., Suite 1900
     Raleigh, NC 27601
     Telephone: 919-783-6400
     Facsimile: 919-783-1075

     *Counsel for Plaintiffs*


**SOUTHERN COALITION FOR SOCIAL JUSTICE**

By:  /s/ Allison J. Riggs
     Allison J. Riggs
     N.C. State Bar No. 40028
     allisonriggs@southerncoalition.org
     Jaclyn A. Maffetore
     N.C. State Bar No. 50849
     jaclynmaffetore@southerncoalition.org
     1415 W. Highway 54, Suite 101
     Durham, NC 27707
     Telephone: 919-323-3909
     Facsimile: 919-323-3942

     *Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will provide electronic notification of the same to the following:

Alexander M. Peters
Special Deputy Attorney General
Office of the Attorney General
P.O. Box 629
Raleigh, NC 27602
apeters@ncdoj.gov

*Counsel for Defendants State of North Carolina and State Board of Elections and Ethics Enforcement*

Phillip J. Strach
Michael D. McKnight
Ogletree, Deakins, Nash, Smoak, & Stewart, P.C.
4208 Six Forks Road, Suite 1100
Raleigh, NC 27602
phillip.strach@ogletreedeakins.com
michael.mcknight@ogletreedeakins.com

*Counsel for Legislative Defendants*

This the 23rd day of January, 2018.

_/s/ Allison J. Riggs_____
Allison J. Riggs

*Counsel for Plaintiffs*

**CERTIFICATE OF WORD COUNT**

I, Allison J. Riggs, hereby certify that the foregoing Response in Opposition to Legislative Defendants' Emergency Motion to Stay Pending Supreme Court Review And Request for Expedited Ruling contains 2,653 words, which were counted by the Word Count feature of Microsoft Word 2016, and thereby complies with Local Rule 7.3(d)(1).

This the 23rd day of January, 2018.

 /s/ Allison J. Riggs
Allison J. Riggs

*Counsel for Plaintiffs*