# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# NO. 1:15-CV-00399

| | |
|---|---|
| SANDRA LITTLE COVINGTON, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) |
| STATE OF NORTH CAROLINA, *et al.* | ) |
| Defendants. | ) |

**Legislative Defendants' Statement of Position Concerning the Statement of Fees and Expenses of the Special Master**

Defendants Robert A. Rucho, David R. Lewis, Philip E. Berger, and Timothy K. Moore ("legislative defendants"), pursuant to the Court's text order of February 20, 2018, file this Statement of Position concerning the Statement of Fees and Expenses of the Special Master (D.E. 251).

## RELEVANT PROCEDURAL BACKGROUND

On July 31, 2017, this Court gave the General Assembly until September 1, 2017 to enact new districting plans remedying the constitutional deficiencies found with respect to certain districts, and until September 8, 2017 to file the newly enacted plan with the Court. (D.E. 180) On August 31, 2017, the North Carolina legislature enacted new redistricting plans for the North Carolina House of Representatives and the North Carolina Senate (the "2017 plans"), and subsequently filed those plans with the Court on September 7, 2017. (D.E. 184) A week later, pursuant to the schedule ordered by this Court, plaintiffs filed four sets of "objections" to the 2017 plans (the "Objections"), only

1

one of which related to any of the districts that had been previously invalidated by this Court. (D.E. 187) (objecting to the 2017 version of redrawn Senate Districts 21 and 28 and House Districts 21 and 57 which were previously declared unconstitutional by the Court) Plaintiffs' remaining Objections involved claims never made in this litigation involving alleged violations of various provisions of the North Carolina constitution. (*Id.*) Legislative defendants responded to plaintiffs' Objections the following week and argued that this Court lacked jurisdiction to consider plaintiffs' various state-law challenges to the 2017 plans and, in any event, plaintiffs' case was moot due to the enactment of the 2017 plans and should be required to file a new lawsuit to raise these claims. (D.E. 192)

On October 12, 2017, the Court held a hearing on plaintiffs' Objections to the 2017 plans. After this Court's hearing on plaintiffs' Objections, no final ruling was entered on plaintiffs' Objections. Instead, on October 26, 2017, the Court appointed a Special Master, over the legislative defendants' objections, to draft "remedial" districts "[i]n anticipation of the likely possibility" that the Court would later invalidate some or all of the 2017 plans. (D.E. 202) In the same order, this Court stated the following with respect to the costs and expenses of the Special Master:

> All reasonable costs and expenses of the Special Master, including compensation of the Special Master, his research assistants, and any other assistant or advisor he may retain, shall, subject to further order and approval by this Court, be paid in full by the State of North Carolina within thirty days after court approval. The State of North Carolina may seek apportionment of such fees at the end of the case, should circumstances warrant. The Special Master shall preserve all record of time and expenses incurred.

2

(*Id.* at pp. 4-5) Although, at the time of this order, the Court had not yet sustained any of the plaintiffs' Objections to the 2017 plans, the Court ordered the Special Master to submit a report and his own proposed plans by December 1, 2017. (D.E. 206)

The legislative defendants repeatedly objected to this procedure. (D.E. 204, 215, 218, 224, 225, 230) Legislative defendants also asked the Court to enter a final ruling on the plaintiffs' Objections no later than December 2017 in order to preserve the legislature's right to cure any defects in the 2017 plans found by the Court. On December 11, 2017, legislative defendants asked this Court to expedite its ruling so that there would be enough time for legislative defendants to enact new districts after a final ruling by this Court, and to appeal to the Supreme Court. (D.E. 225) That motion was denied and the Court did not schedule a hearing on the Special Master's report until January 5, 2018. (D.E. 228)

Three weeks before the beginning of the filing period for legislative elections, on January 19, 2018, this Court entered its Order enjoining the use of the districts challenged in plaintiffs' Objections and ordering that districts drawn by the Special Master be used instead. (D.E. 241) The Court entered an amended version of that order on January 21, 2018. (D.E. 242) On January 24, 2018, legislative defendants filed an application for a stay of this Court's order with the United States Supreme Court pending the timely filing and disposition of an appeal. On February 6, 2018, that application was granted as to the part of this Court's order directing the revision of House districts in Wake and Mecklenburg County and denied as to this Court's order on the remaining districts. (D.E. 249)

3

This Court entered a text order on February 20, 2018, directing the clerk to file the Statement of Fees and Expenses of the Special Master and ordering the parties to file any statements of position concerning the Statement by February 27, 2018. The clerk filed the Statement the same day. (D.E. 251)

**STATEMENT OF POSITION**

Under Fed. R. Civ. P. 53, compensation for a Special Master "must be paid either: (A) by a party or parties; or (B) from a fund or subject matter of the action within the court's control." Fed. R. Civ. P. 53(g)(2). If the fee is paid by the parties, "[t]he court must allocate payment among the parties after considering the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master." Fed. R. Civ. P. 53(g)(3). The rule also allows the Court to make an "interim allocation" which "may be amended to reflect a decision on the merits." *Id.*

For the reasons set forth below, the parties should not be responsible for the Special Master's Fees and Expenses in this case because it was not necessary for the Court to employ a Special Master. To the extent the Court determines that the parties should be responsible for the Special Master's Fees and Expenses, they should be apportioned equally among the plaintiffs and the State of North Carolina. If the Court orders the State of North Carolina to pay all of the Special Master's fees and expenses, such order should be treated as an "interim allocation" and legislative defendants should have the right to petition the Court for re-allocation of those fees and expenses following disposition of their appeal to the United States Supreme Court.

4

### 1. The State of North Carolina should not be responsible for the Special Master's Fees and Expenses because a Special Master was not necessary.

The taxpayers of the State of North Carolina should not be responsible for the fees and expenses incurred by the Special Master in this matter because it was not necessary for the Court to employ a special master to fix the constitutional deficiencies the Court found with respect to the 2011 legislative redistricting plans. Had the Court timely issued a final ruling on plaintiffs' Objections to the 2017 plans, there would have been ample time for the General Assembly to cure any alleged constitutional infirmities with the newly drawn plans. But rather than enter a final ruling on plaintiffs' Objections on October 26, 2017, which would have allowed the General Assembly time to fix any alleged deficiencies, the Court announced it would appoint a Special Master "[i]n anticipation of the likely possibility" that it might sustain some or all of plaintiffs' Objections.

After Professor Persily was selected to serve as the Special Master in this case, the Court allowed him until December 1, 2017, to produce an alternative districting plan for the Court's consideration. With proper direction from the Court regarding any alleged deficiencies in the 2017 plans, the General Assembly could have just as easily passed amendments to the 2017 plans or provided the Court with an "alternative" districting plan as Professor Persily did by the December 1, 2017 deadline.

The Court's refusal to allow the General Assembly to correct any deficiencies in the 2017 plan apparently rests on the Court's legal conclusion that a legislature must be provided only "one bite at the apple" to cure any deficiencies found by a court in a

5

Case 1:15-cv-00399-TDS-JEP   Document 253   Filed 02/27/18   Page 5 of 11

districting plan. (D.E. 206, p. 4) (stating that "[t]he State is not entitled to multiple opportunities to remedy its unconstitutional districts."); (D.E. 242, p. 70 n. 10) ("That providing the General Assembly with a second bite at the apple would further draw out these proceedings and potentially interfere with the 2018 election cycle further militates against providing the General Assembly with such an opportunity.")

Notwithstanding the fact that the 2017 plans were entirely new plans that the General Assembly had not yet had one "bite at the apple" to cure, legislative defendants are aware of no authority stating that a legislature is limited to one opportunity to remedy defective districts. This is particularly true where, as here, the 2011 maps containing the districts the Court found unconstitutional were repealed and replaced with a new law in the form of the 2017 plans. Most of the cases that this Court appeared to rely upon for this conclusion either involved cases in which a legislature failed to enact a new plan at all, *see, e.g., Reynolds v. Sims*, 377 U.S. 533, 543, 585-87 (1964), or municipal plans that were proposed for adoption and implementation by a court rather than a new law duly enacted by a legislature, *see, e.g., Large v. Fremont Cty., Wyo.*, 670 F.3d 1133, 1138, 1148-49 (10th Cir. 2012); *McGhee v. Granville Cty., N.C.*, 860 F.2d 110, 115 (4th Cir. 1988).

But regardless of whether the Court was *required* to allow the General Assembly to cure any constitutional deficiencies in the 2017 plans, had the Court *allowed* it to do so, it almost certainly could have fixed any issues or provided the Court with an "alternative" plans for less than the $124,125 in fees and expenses charged by Professor Persily. By way of comparison, Dr. Hofeller was paid $50,000 to prepare the 2017 plans

6

which included a total of 170 districts while Professor Persily's fees and expenses amount to nearly three times as much for drawing a remedy for approximately nine districts.[1] (D.E. 184-1, p. 83) The minority leaders in the House and Senate were also offered up to $50,000 for use in drawing their own proposed redistricting plans in 2017. (*Id.*) While legislative defendants recognize that Professor Persily's fees and expenses include the time he spent to prepare his report and presentation to the Court and travel to North Carolina in addition to the maps he drew, none of these items would have been necessary had the Court explained what needed to be done to "fix" the districts Professor Persily was charged with re-drawing and allowed the General Assembly to follow the Court's directive. For these reasons, the State of North Carolina should not be required to pay Professor Persily's fees and expenses.

> **2. If the parties are required to pay the Special Master's Fees and Expenses, they should be divided evenly between the Plaintiffs and the State of North Carolina.**

Should the Court determine that the Special Master's Fees and Expenses should be paid by the parties, the Court should allocate these fees equally between plaintiffs and the State of North Carolina. Rule 53(g)(3) states that the Court should consider three factors in deciding how to allocate payment for a Special Master's compensation: (1) the nature

---

[1] Professor Persily's hourly rate of $500 is also twice that of the $250 hourly rate charged by Douglas Johnson, Ph.D. (Tr. Special Master Hearing, p. 91:13-16), the expert hired by legislative defendants to provide an analysis of Professor Persily's report and to testify at the January 5, 2018 hearing regarding Professor Persily's report. Like Professor Persily, Dr. Johnson is based in California and had extensive experience in redistricting matters and in drawing districting plans.

7

and amount of the controversy; (2) the parties' means; and (3) the extent to which any party is more responsible than other parties for the reference to a master.

Dividing the Special Master's Fees and Expenses between plaintiffs and the State of North Carolina is appropriate here when all three factors are considered. At least half of the relief sought by plaintiffs has been stayed by the United States Supreme Court, which means that there is at least a "reasonable probability" that the Supreme Court will note probable jurisdiction in this case and a "fair prospect" that a majority of justices on the Supreme Court will vote to reverse the portion of this Court's decision sustaining Plaintiffs' objections to the House Districts in Wake and Mecklenburg counties. *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (listing requirements for a stay pending the filing and disposition of an appeal). It also remains possible that the Supreme Court will entirely reverse this Court's decision. In these circumstances and due to the nature of the Special Master's appointment at this stage of the proceedings, a division of the Special Master's fees and expenses is appropriate here.

With respect to the parties' "means," all of the individual plaintiffs previously testified that they were not responsible for paying any of the fees and expenses incurred in this matter and did not know who was responsible for paying those items. (D.E. 118, pp. 182-83) (citing deposition testimony by plaintiffs). The evidence at trial showed that at least one third-party, Democracy Partners II, provided funding for the fees and expenses in this litigation. (Tr. Vol. V, p. 135:7-11, 139:6-18) Accordingly, the "means" of the plaintiffs here should not prohibit the Court from allocating the Special Master's Fees and Expenses evenly between the Plaintiffs and the State of North Carolina.

8

Finally, if anything, plaintiffs are more responsible for the appointment of a Special Master in this case than the defendants. Plaintiffs proposed and supported the Court's retention of a Special Master in this matter while the legislative defendants opposed it. Additionally, as the Court noted in its order appointing a Special Master, plaintiffs failed to produce viable alternatives to the districts enacted by the General Assembly in the 2017 plans that were the subject of their Objections. (D.E. 206, p. 2) ("The Court is concerned that, among other things, some of the districts proposed by the Plaintiffs may be the result of impermissible political considerations.") In balancing these factors and circumstances, allocating the Special Master's fees and expenses equally between plaintiffs and the State of North Carolina is appropriate if such fees and expenses must be paid by the parties.

**3. If the State of North Carolina is ordered to pay the entirely of the Special Master's Fees and Expenses at this time, the Court should later permit apportionment to the Plaintiffs in the event this case is reversed on appeal.**

If the Court orders the State of North Carolina to pay all of the Special Master's fees and expenses at this time, such order should be treated as an "interim allocation" under Fed. R. Civ. P. 53(g)(3) and legislative defendants should have the right to petition the Court for re-allocation of those fees and expenses following disposition of their appeal to the United States Supreme Court. Should legislative defendants ultimately prevail on their appeal in whole or in part, it would be inequitable to require the State of North Carolina to pay all of the costs and expenses of the Special Master.

9

**4. The Special Master should be required to make the entirety of his work product publicly available if the State of North Carolina is ordered to pay the entirety of his fees and expenses.**

In the event the Court orders the State of North Carolina to pay the entirety of the Special Master's Fees and Expenses, he should be required to make the entirety of his work product available to the public. In his Fee Statement, the Special Master indicates that both he and his assistant, Professor Patrick Egan, created "multiple solutions" and draft maps as part of their work that do not appear to have been included in either of the Special Master's reports or otherwise disclosed to the parties. All of these drafts, along with the work product of both Professor Persily and Professor Eagan, should be released by the Court to the public if the State of North Carolina is ordered to pay all fees and expenses associated with the Special Master's work in this matter.

Respectfully submitted this 27th day of February, 2018.

OGLETREE, DEAKINS, NASH
SMOAK & STEWART, P.C.

/s/ Phillip J. Strach
Phillip J. Strach
N.C. State Bar No. 29456
Michael D. McKnight
N.C. State Bar No. 36932
phil.strach@ogletreedeakins.com
michael.mcknight@ogletreedeakins.com
4208 Six Forks Road, Suite 1100
Raleigh, North Carolina 27609
Telephone: (919) 787-9700
Facsimile: (919) 783-9412
*Counsel for Legislative Defendants*

# CERTIFICATE OF SERVICE

It is hereby certified that the foregoing **Legislative Defendants' Statement of Position Concerning the Statement of Fees and Expenses of the Special Master** has been electronically filed with the Clerk of Court using the CM/ECF system which will provide electronic notification of the same to the following:

Edwin M. Speas, Jr.
Carolina P. Mackie
Poyner Spruill LLP
P.O. Box 1801 (27602-1801)
301 Fayetteville St., Suite 1900
Raleigh, NC 27601
espeas@poynerspruill.com
cmackie@poymerspruill.com
*Attorneys for Plaintiffs*

Allison J. Riggs
Southern Coalition for Social Justice
1415 Highway 54, Suite 101
Durham, NC 27707
allisonriggs@southerncoalition.org
*Attorneys for Plaintiffs*

Alexander McC. Peters
Senior Deputy Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602

This the 27th day of February, 2018.

OGLETREE, DEAKINS, NASH
SMOAK & STEWART, P.C.

/s/ Phillip J. Strach
Phillip J. Strach

33093425.1